308 So.2d 595 (1975)
John WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. W-254.
District Court of Appeal of Florida, First District.
February 21, 1975.
Rehearing Denied March 19, 1975.
Stephen P. Mickle, Mickle, Harris & Green, Gainesville, for appellant.
Robert L. Shevin, Atty. Gen., and Michael M. Corin, Asst. Atty. Gen., for appellee.
*596 BOYER, Acting Chief Judge.
Appellant was tried and convicted of breaking and entering a dwelling with the intent to commit a felony and grand larceny. This Court granted appellant a full appellate review pursuant to Hollingshead v. Wainwright, Sup.Ct.Fla. 1967, 194 So.2d 577.
The dwelling which the appellant is accused of burglarizing is the home of Mr. and Mrs. Eugene Bailey. At trial, Mr. Bailey testified that on the evening of September 21, 1971, while he was at work his home was broken into and various items were stolen, including a television and clothes. Mrs. Bailey, the only other member of the household, was in Miami on that particular night.
The only evidence connecting the appellant with the crime were his fingerprints which were found on two candlestick holders, a plate, a pitcher, and on the back of an inside doorknob. Mr. Bailey stated that, as far as he knew, the appellant had never been inside the house. The appellant, however, stated that approximately 10 days before the burglary, he had accompanied a cousin of Mrs. Bailey into the Bailey home where the cousin and Mrs. Bailey entered into a 20 to 30 minute conversation. During that period, according to the appellant, he stayed mostly in the living room but did go into the kitchen at one point to get a glass of water from Mrs. Bailey. Neither Mrs. Bailey nor Mrs. Bailey's cousin testified at the appellant's trial.
The State concedes that in order to establish identity by use of fingerprints the State must show that the fingerprints of the accused could only have been made at the time the crime was committed. (Tirko v. State, Fla.App.3rd 1962, 138 So.2d 388) The State argues, however, that there is a distinct difference between fingerprints found in a private place and fingerprints found in a public place. Citing Summerson v. State, Fla.App.3rd 1967, 200 So.2d 594, the State asserts that it has a greater burden where the fingerprints are found in a public place. Superficially, this distinction makes a bit of sense. It would appear more likely that an accused could have left his fingerprints prior to the crime in a public place such as a grocery or department store than in a private place such as a private office or a dwelling.
A deeper analysis, however, reveals that the distinction is artificial and impracticable. Utilization of the public-private place distinction would lead the court into a morass of analytical difficulties which would obscure the real issues involved. A perfect illustration is Summerson, supra, wherein the place involved was a dentist's office which would normally be classified as a public place: But the file cabinet on which the defendant's fingerprints were found was located in a part of the office where the public was not normally allowed. Thus, the public-private place distinction breaks down and must be redefined as a distinction between public places on the one hand and private parts of public places as well as private places on the other. In the case sub judice, fearing that this Court might accept the public-private place distinction, the appellant argues that the distinction be broken down even further: That since the appellant's fingerprints were found in the living room which is a relatively public place in the home as opposed to a bedroom or closet, the living room could be classified as a public part of a private place and the State's burden should be just as high as if the fingerprints were found in a totally public place.
We reject the above method of analysis. There is no logical distinction between a public and private place, as such. The real distinction lies in the relative location of the object upon which the fingerprints are found and the reasonableness of prior access. In deciding whether a defendant may be convicted solely on the basis of fingerprints found at the scene of the crime, a court should utilize the above mentioned factors in determining whether *597 the fingerprints could only have been left at the time the crime was committed. Necessarily, the ultimate outcome will depend on the circumstances of each individual case and will lead to a more thorough examination of the circumstances of each case. We anticipate that this case-by-case method will be more fruitful than efforts to dispose of this type of case by attempting to characterize the place involved as either public or private.
We feel impelled to comment on that portion of Mr. Bailey's testimony at trial wherein he stated that, to the best of his knowledge, the appellant had never been in his home and that, to the best of his knowledge, Mrs. Bailey had never allowed the appellant to enter their home. Although not objected to by defense counsel at trial, that kind of speculative testimony is looked on with disfavor and is not sufficient, standing alone, to support a conviction. There is nothing wrong with the witness' testimony that he had never let the appellant into his house, but it was of little, if any, probative value for him to testify that, as far as he knew, his wife had never let the appellant into their home. He, of course, was not with his wife every minute of every day and could not possibly know of her activities at all times.
This leads us to a consideration of the absence of trial testimony from either Mrs. Bailey or her cousin either of whom obstensibly, could have confirmed or denied the appellant's account of how his fingerprints happened to appear in the Bailey home. It may be argued that the appellant should have called either or both persons to verify his story. Fatal to this contention is the bed rock of criminal jurisprudence in this country: An accused is presumed innocent until proven guilty beyond and to the exclusion of a reasonable doubt. The State, therefore, had the burden to establish the appellant's guilt rather than the appellant having the burden to establish his innocence. The record in this case is as consistent with innocence as it is with guilt. In the absence of other inculpatory evidence the State had the burden of proving that the fingerprints could only have been made at the time the crime was committed. In assuming this burden, the State should have called Mrs. Bailey and/or her cousin whose testimony would have tended to either overcome the presumption of innocence or affirmed it.
In reversing this case for a new trial, we point out to the State the obvious: If it can be shown at the new trial that the appellant's story of being in the Bailey home at a time prior to the commission of the crime was manufactured and untrue, then the State may and should consider prosecution for perjury.
Reversed and remanded for a new trial.
McCORD and MILLS, JJ., concur.