395 So.2d 492 (1980)
Anthony Ray PEEK, Appellant,
v.
STATE of Florida, Appellee.
No. 54226.
Supreme Court of Florida.
October 30, 1980.
As Corrected on Denial of Rehearing January 27, 1981.
Certiorari Denied April 27, 1981.
*493 Jack O. Johnson, Public Defender, and Paul C. Helm, Asst. Public Defender, Bartow, for appellant.
*494 Jim Smith, Atty. Gen., and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
Certiorari Denied April 27, 1981. See 101 S.Ct. 2036.
PER CURIAM.
Appellant Anthony Ray Peek was convicted of first degree murder, sexual battery, grand larceny and burglary. The jury recommended and the trial judge imposed a sentence of death on the murder charge. Jurisdiction vests in this Court pursuant to article V, section 3(b)(1), Florida Constitution. We affirm the conviction and sentence.
Erna L. Carlson returned to her home in Winter Haven, Florida, following a visit with relatives at approximately 9:00 p.m. on May 21, 1977. At 8:30 a.m. the following morning, Mrs. Carlson's body was discovered in her bedroom with her robe and part of a bedspread tied tightly around her neck. The screens on the door to the porch and on the door leading from the porch to the house had been cut, and a piece of stocking containing a strand of negroid hair was found in the garage. The victim's pajama bottoms contained blood and seminal fluid stains. No fingerprints were found in the house.
On May 22, 1977, police located Mrs. Carlson's automobile at a lakeside park approximately one mile from her home. The door to the driver's side was locked, the passenger door was not. The keys to the automobile were in the glove compartment. Fingerprints were found on the inside of the driver's side window.
Prompted by allegations that Peek had been going door to door seeking employment in the Winter Haven area, Officer Donnelly of the Winter Haven Police Department interviewed him several days after the murder. Appellant lived in a supervised halfway house at the time of the crime. He told Donnelly that he had returned to the halfway house before 11:00 p.m. on the night of May 21, 1977, and had not been in the vicinity of Mrs. Carlson's home or of the lakeside park. Appellant voluntarily permitted the taking of his fingerprints and the extraction of hair samples. The hair samples were sent to the Sanford Crime Lab for comparison but were lost subsequent to the testing.
Appellant was tried in the Circuit Court for Polk County on April 10, 1978. Dr. Luther Youngs testified that Mrs. Carlson died of strangulation. She also had been raped and had suffered two fractured ribs. An employee from the Sanford Crime Lab testified that the hair samples obtained from appellant were consistent in microscopic appearance to the hair found in the stocking at the scene of the crime. Although it is never possible to say that two hairs are identical, the hairs of only approximately two out of every 10,000 persons exhibit consistent microscopic characteristics. The blood and seminal fluid stains taken from Mrs. Carlson's pajamas were from an individual with type O secretor blood; appellant is a type O secretor. The evidence further revealed that the fingerprints found inside Mrs. Carlson's car matched those of appellant.
Appellant took the stand and, with one significant exception, reiterated the account first given to Officer Donnelly. He contradicted, however, his prior assertion that he was not in the area where the victim's car was found on May 22, 1977. Appellant testified instead that on that morning he rode his bicycle to the lakeside park. Noticing a car parked nearby with the door unlocked, he opened the door and searched the glove compartment, after which he rode his bicycle back to the halfway house.
The jury found appellant guilty of all four offenses and returned a recommended sentence of death on the murder charge. Prior to sentencing, defense counsel's motion for appointment of experts to examine appellant as a mentally disordered sex offender was denied. On May 2, 1978, the court adjudged appellant guilty and sentenced him to death for first degree murder. The court also imposed a life sentence for the sexual battery and a term of five years each for grand larceny and burglary, to run consecutively.

*495 I
Appellant challenges his conviction on essentially three grounds. He first asserts that the prosecution failed to establish an adequate chain of custody of his hair samples. The evidence at trial revealed that on July 7, 1977, Officer Latner received four hair samples from appellant which he sealed in four separate plastic bags. The samples were transferred to the Sanford Crime Lab. Diana Bass, a microanalyst at the Sanford Lab, testified that in December of 1977 she received several sealed plastic bags containing negroid hair. The transmittal sheet accompanying the bags noted that the samples were from Anthony Ray Peek. The bags did not appear to have been "opened, tampered with, or in any way adulterated."
Relevant physical evidence is admissible unless there is an indication of probable tampering. Frederiksen v. State, 312 So.2d 217 (Fla. 3d DCA 1975); Stunson v. State, 228 So.2d 294 (Fla. 3d DCA 1969). Accord, United States v. Daughtry, 502 F.2d 1019 (5th Cir.1974). The record here reflects no hint of tampering, thus the trial judge did not abuse his discretion in permitting the introduction of the hair comparison analysis.
Appellant's assertion that he was denied due process by introduction of the hair samples because their subsequent loss prevented an independent inspection is similarly unavailing. While there is support for the proposition that a criminal defendant must have an opportunity to inspect physical evidence which is to be used against him, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Barnard v. Henderson, 514 F.2d 744 (5th Cir.1975); Johnson v. State, 249 So.2d 470 (Fla. 3d DCA 1971), cert. discharged 280 So.2d 673 (Fla. 1973), such a right, like most others, may be waived. In this case appellant made demand for discovery of reports and results of scientific tests and experiments, to which the state responded with a list of the hair samples and lab reports. Appellant did not, however, move the trial court to inspect or test the hair specimens. He cannot now claim entitlement to a right which in the first instance he chose to forego.
Appellant next contends that the evidence failed to establish his guilt beyond a reasonable doubt. He properly cites McArthur v. State, 351 So.2d 972 (Fla. 1977), prohibition denied sub nom. McArthur v. Nourse, 358 So.2d 132 (Fla. 1978), vacated and remanded on other grounds sub nom. McArthur v. Nourse, 438 U.S. 902, 98 S.Ct. 3119, 57 L.Ed. 1145 (1978), for the proposition that circumstantial evidence will not sustain a conviction unless it is inconsistent with any reasonable hypothesis of innocence. Accord, Davis v. State, 90 So.2d 629 (Fla. 1956). In applying the standard, the version of events related by the defense must be believed if the circumstances do not show that version to be false. Mayo v. State, 71 So.2d 899 (Fla. 1954); Holton v. State, 87 Fla. 65, 99 So. 244 (1924).
The case against appellant is concededly circumstantial. But we are satisfied that, when considered in combination, the evidence relating to the matching fingerprints, the hair comparison, and the blood and semen analysis enabled the jury to reasonably conclude that appellant's quilt was proven beyond a reasonable doubt. Moreover, appellant's only reasonable hypothesis of innocence, that he entered the victim's car at the lakeside park the morning following the murder, was effectively discredited by Officer Donnelly's account on rebuttal of appellant's original assertion that he had never been in the vicinity of the park. In view of this prior inconsistent statement, the jury was justified in disbelieving appellant's version of events.
We have considered the remaining issues related to appellant's conviction, but find them to be without merit.

II
Turning to the sentencing phase of the trial, we must first consider whether the trial court abused its discretion in denying defense counsel's motion for appointment of experts to examine appellant as a *496 mentally disordered sex offender. Section 917.14, Florida Statutes (1977), provides:
917.14 Certifying defendant for hearing.
(1) If a defendant has been convicted of or has pleaded guilty or no contest to an offense or attempted offense in a current prosecution, the court may defer sentencing and certify him for a hearing and examination in the circuit court to determine whether he is a mentally disordered sex offender.
(2) The court may certify a defendant under subsection (1) on its own motion, on motion by the State Attorney or the defendant, or on application by affidavit of the defendant.
By the act's express terms, certification under section 917.14 is discretionary. Failure to certify will not be error unless the record reveals a clear abuse of judicial discretion. LeDuc v. State, 365 So.2d 149 (Fla. 1978); Huckaby v. State, 343 So.2d 29 (Fla. 1977). No such error has been demonstrated in this case.
In its charge to the sentencing jury on the proper consideration of aggravating and mitigating circumstances, the trial court instructed that "[t]he aggravating circumstances which may be considered, are limited to such of the following as may be established by the evidence ..." and "[t]he mitigating circumstances, which you may consider if established by the evidence, are these ..." (emphasis supplied). Appellant maintains that this charge unconstitutionally limited jury consideration of mitigating factors to those statutorily enumerated. We do not agree.
Perhaps the clearest and most constant principle emanating from the sometimes obscure light of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and its progeny is that unbridled discretion in sentencing capital defendants begets arbitrary and discriminatory application of the death penalty. We are told that at least three justices in Furman believed the death penalty unconstitutional because:
discretionary sentencing, unguided by legislatively defined standards, violated the Eighth Amendment because it was "pregnant with discrimination," id., at 257 [92 S.Ct., 2735] (Douglas, J., concurring), because it permitted the death penalty to be "wantonly" and "freakishly" imposed, id., at 310 [92 S.Ct., at 2762] (Stewart, J., concurring), and because it imposed the death penalty with "great infrequency" and afforded "no meaningful basis for distinguishing the few cases in which it [was] imposed from the many cases in which it [was] not," id., at 313 [92 S.Ct., at 2764] (White, J., concurring).
Lockett v. Ohio, 438 U.S. 586, 599, 98 S.Ct. 2954, 2962, 57 L.Ed.2d 973 (1978). It appears incontestable, then, that to a large extent "the sentencing authority's discretion [must be] guided and channeled by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition." Proffitt v. Florida, 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976).
Recurring to the charge given in this case, we note at the outset that it in no way restricts the jury to a consideration of the statutorily enumerated mitigating circumstances. Indeed, the instruction on mitigating circumstances, when read in conjunction with the express limitation on consideration of aggravating circumstances, advises the jury that the list of statutory mitigating factors is not exhaustive. See Songer v. State, 365 So.2d 696, 700 (Fla. 1978) (on rehearing). It strikes a constitutional balance by directing, but not limiting, scrutiny to those areas of mitigation considered vital by the legislature in determining the fairness of a life or death sentence, thereby assuring that the death penalty will be applied in a consistent and rational manner.[1] Were we to sanction an instruction *497 which established no effective guidance for the jury in considering circumstances which may mitigate against death, we would surely breathe life into Mr. Justice Rehnquist's admonition that such a procedure would "not guide sentencing discretion but [would] totally unleash it." Lockett v. Ohio, 438 U.S. at 631, 98 S.Ct. at 2975, 57 L.Ed.2d 973 (Rehnquist, J., concurring in part and dissenting in part).
Contrary to appellant's assertion, the instruction given here is consistent with Lockett v. Ohio. Lockett holds only that a sentencing body must not be precluded from considering, as a mitigating factor, aspects of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. As noted above, our death penalty statute does not limit consideration of mitigating circumstances to those statutorily enumerated.[2] Moreover, unlike the Ohio statute invalidated in Lockett, the mitigating circumstances in Florida's statute direct the jury's attention to many aspects of the defendant's character and the circumstances surrounding the offense.[3] While we do not contend that the statutory mitigating circumstances encompass every element of a defendant's character or culpability, we do maintain that the factors, when coupled with the jury's ability to consider other elements in mitigation, provide a defendant in Florida with every opportunity to prove his or her entitlement to a sentence less than death.
The trial judge made these findings of fact in support of the death sentence:
As to Count One of the Indictment, wherein the Defendant was convicted of First Degree Murder, the Court makes the following findings of fact:
1. As an aggravated circumstance under Florida Statute 921.141(5)
(a) The capital felony of Murder in the First Degree was committed by Anthony Ray Peek while he was on probation on two charges of Burglary, one count of Grand Larceny and two charges of Petit Larceny, having been placed on said probation on November 15, 1976, for a period of five (5) years. Copy of the Order of Probation in Case No. CF76-1842 is attached hereto and marked "Exhibit A".
(b) The defendant was previously convicted in Polk County, Florida, on December 15, 1977, of three charges, to wit: Burglary, Sexual Battery and Robbery, and was on the 4th day of April, 1978, sentenced to life imprisonment on the Sexual Battery charge and fifteen (15) years on each of the Burglary and Robbery charges to run consecutively with the life sentence. A copy of the Judgment and Sentence in this case is attached and marked "Exhibit B"; that the conviction for the felonies contained in the Information in Case No. CF77-1658 involved the use or threat of violence to the victim.
(c) The Court finds that the facts of this case do not support the aggravated circumstances in Florida Statutes 921.141(5)(c) in that the Defendant did not knowingly create a great risk of death to many persons, other than the victim.
(d) The capital felony, the murder of Erna L. Carlson, was committed while the Defendant was actively engaged in the commission of the sexual battery of Erna L. Carlson.
(e) This Court finds that the facts of this case do not support the aggravated circumstances in Florida Statutes 921.141(5)(e) in that this capital felony was not committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
(f) This Court finds that the crime was committed by Anthony Ray Peek for pecuniary gain by ransacking the *498 victim's purse, obtaining the keys to a motor vehicle, the property of Erna L. Carlson, and then stealing said motor vehicle.
(g) This Court finds that the facts of this case do not support the aggravated circumstances in Florida Statutes 921.141(5)(g) in that the capital offense was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
(h) This Court finds that this capital offense was especially heinous, atrocious and cruel in that evidence at the trial shows that the sixty-five year old victim, Erna L. Carlson, received extensive blows to her head and body, broken ribs, a crushed larnyx, and was strangled by the use of clothing and bedclothes wound around her neck and tied to the headboard of a bed. According to expert medical opinion, the victim suffered tremendous excruciating pain while being raped and killed.
2. As to mitigating circumstances in Florida Statutes 921.141(6)
(a) The Court finds that the Defendant, ANTHONY RAY PEEK, did have a history of prior criminal activity and, therefore, rejects Florida Statutes 921.141(6)(a) as a mitigating circumstance.
(b) The Court finds that this capital offense was not committed while the Defendant was under extreme mental or emotional disturbance and, therefore, rejects Florida Statutes 921.141(6)(b) as a mitigating circumstance.
(c) The victim, Erna L. Carlson, was not a participant in the Defendant's acts of Burglary, Grand Larceny, Sexual Battery and Murder in the First Degree, and this Court expressly rejects this subsection, Florida Statutes 921.141(6)(c) as a mitigating circumstance.
(d) The Defendant acted alone in the commission of these offenses and the Court expressly rejects subsection 921.141(6)(d), Florida Statutes, as a mitigating circumstance.
(e) The Defendant, ANTHONY RAY PEEK, did not act under extreme duress or under the domination of any other person and the Court expressly rejects subsection 921.141(6)(e) as a mitigating circumstance.
(f) The Defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired, and the Court expressly rejects subsection 921.141(6)(f), Florida Statutes, as a mitigating circumstance.
(g) Finally, the age of the Defendant, ANTHONY RAY PEEK, has been considered as required by subsection 921.141(6)(g) of the Florida Statutes. The Defendant was twenty (20) years old at the time of the offense and his age is rejected as a mitigating circumstance.[4]
In conclusion, the Court finds that there are sufficient aggravating circumstances to justify the imposition of the death penalty. There are no mitigating circumstances. The evidence clearly demonstrates that Erna L. Carlson was the victim of a cold, cruel and heartless killer.
Appellant argues that his age at the time of the commission of the crime should have been considered a mitigating factor.[5] There is no per se rule which pinpoints a particular age as an automatic factor in mitigation. The propriety of a finding with respect to this circumstance depends upon the evidence adduced at trial and at the sentencing hearing. Compare Hoy v. State, 353 So.2d 826 (Fla. 1977), with Songer v. State, 322 So.2d 481 (Fla. 1975). The trial judge expressly considered but rejected appellant's age as a mitigating factor. The record supports his finding.
*499 Appellant contends it was error to regard appellant's probationary status as being within the aggravating circumstance set forth in section 921.141(5)(a), Florida Statutes (1977), which allows consideration as an aggravating circumstance the fact that the capital felony was "committed by a person under sentence of imprisonment." The appellant asserts that a grant of probation is not a sentence of imprisonment because a probationer is not in prison confinement. Under the facts of this case, we agree an individual on probation and not incarcerated is not under a sentence of imprisonment.
Probation is a sentence alternative but is not generally considered to be a sentence of imprisonment. An exception arises, however, if the order of probation includes as a condition a term of incarceration and the capital felony is committed while the defendant is or should be incarcerated. We find that the phrase "person under sentence of imprisonment" includes (a) persons incarcerated under a sentence for a specific or indeterminate term of years, (b) persons incarcerated under an order of probation, (c) persons under either (a) or (b) who have escaped from incarceration, and (d) persons who are under sentence for a specific or indeterminate term of years and who have been placed on parole. Persons who are under an order of probation and are not at the time of the commission of the capital offense incarcerated or escapees from incarceration do not fall within the phrase "person under sentence of imprisonment" as set forth in section 921.141(5)(a). Consequently, this aggravating circumstance was improperly found in the instant case.
The trial court further found as an aggravating circumstance that appellant had been convicted of felonies "involving the use or threat of violence to the person." § 921.141(5)(b), Fla. Stat. (1977). Appellant urges that since these prior convictions were on appeal at the time of sentencing, they cannot be considered "convictions" for purposes of section 921.141(5)(b). We disagree. Appellant had previously been convicted of burglary, sexual battery, and robbery. They were on appeal at the time of sentence and were subsequently affirmed. Peek v. State, 374 So.2d 106 (Fla. 2d DCA 1979). These were in fact convictions at the time of sentencing. Because these convictions were affirmed, their consideration by the trial judge in the instant case was proper. We do not have the problem which would arise from the consideration as an aggravating circumstance of a conviction valid at the time of sentencing, that is subsequently reversed and vacated by an appellate court.
The appellant next contends the trial court was also in error in finding that the capital felony was committed for pecuniary gain. § 921.141(5)(f), Fla. Stat. (1977). Although it appears that appellant ransacked Mrs. Carlson's purse and made off with her automobile, there is no evidence that any money or household belongings were taken. The record does not support the conclusion that Mrs. Carlson was murdered to facilitate the theft, or that appellant had any intention of profiting from his illicit acquisition. The more reasonable inference is that appellant stole the car in order to quicken his escape from the scene of the murder. Considering all the circumstances, the evidence linking the murder to a motive for pecuniary gain is insufficient to establish this aggravating factor beyond a reasonable doubt.
The trial court's findings with respect to the two remaining aggravating circumstances are fully justified by the record. It is unrefuted that the capital felony was committed during the commission of a sexual battery. § 921.141(5)(d), Fla. Stat. (1977). Further, the medical testimony clearly establishes that Mrs. Carlson's horrible suffering at the hands of her attacker was "especially heinous, atrocious, or cruel." § 921.141(5)(h), Fla. Stat. (1977). Thus, we have two clearly valid aggravating circumstances, one contested but valid aggravating circumstances, and no mitigating circumstances. We find that the trial court's improper consideration of the two aggravating circumstances concerning pecuniary gain and *500 commission of the offense while on probation does not render the sentence invalid. Hargrave v. State, 366 So.2d 1 (Fla. 1978); Elledge v. State, 346 So.2d 998 (Fla. 1977). Upon an independent review, we find the evidence and record clearly justify the imposition of the death sentence.
Accordingly, the judgments of guilt and sentence of death are affirmed.
It is so ordered.
ADKINS, BOYD, OVERTON and ALDERMAN, JJ., and VANN, Associate Justice, concur.
SUNDBERG, C.J., dissents with an opinion.
ENGLAND, J., dissents.
SUNDBERG, Chief Justice, dissenting.
I respectfully dissent from the majority's affirmance of appellant's conviction. While I am not unmindful of the atrocities committed upon the victim in this case and the principle of law that even in a capital case a conviction may be based wholly upon circumstantial evidence, nevertheless, pursuant to the obligation imposed upon me by section 921.141(4), Florida Statutes (1977), and Florida Rule of Appellate Procedure 9.140(f), I have reviewed the evidence in this cause and determine that the interest of justice requires a reversal. In my mind the evidence is insufficient to prove beyond a reasonable doubt that appellant was the perpetrator of this heinous crime. The hair, blood and semen analysis coupled with the fingerprints found in the victim's automobile are simply insufficient to support the conviction, in view of the statistical probability of the occurrence of like type hair, blood and semen in the population and the inability of the state to establish that the fingerprints were placed in the automobile at the time the crime was committed. State v. Hayes, 333 So.2d 51 (Fla. 4th DCA 1976); Williams v. State, 308 So.2d 595 (Fla. 1st DCA), cert. denied 321 So.2d 555 (Fla. 1975); Wilkerson v. State, 232 So.2d 217 (Fla. 2d DCA 1970). Appellant explained the presence of his fingerprints in the automobile and that they were placed there the morning after the crime. This testimony was discredited by testimony of Officer Donnelly to the effect that appellant had made a previously inconsistent statement. However, Officer Donnelly's testimony did not serve to place appellant's fingerprints in the automobile at the time the crime was committed or at a time shortly thereafter. His testimony was nothing more than impeachment.
Accordingly, based on the evidence in this record, I feel compelled to reverse the judgment of conviction.
Furthermore, I dissent from several conclusions reached by the majority with respect to application of section 921.141(5)(a), Florida Statutes (1977). First, I reject the majority's conclusion that section 921.141(5)(a) permits consideration of a defendant's probation status at the time of commission of a homicide. That section provides that it is an aggravating circumstance if the capital felony was "committed by a person under sentence of imprisonment." (Emphasis supplied.) A grant of probation is not a sentence of imprisonment whether incarceration is a condition of probation or not. The legislature has repeatedly and consistently distinguished between a sentence of imprisonment and probation. Compare chapter 948, Florida Statutes (1979) (probation) with chapter 947, section 947.16, Florida Statutes (1979) (sentence). It cannot be presumed that the legislature was unmindful of this distinction when it enacted section 921.141(5)(a). It may be that a person's actual state of incarceration or escape therefrom at the time of commission of a capital felony is just as valid a consideration for imposition of the death penalty whether that incarceration is by virtue of a sentence or as a condition of probation. Nevertheless, that is a legislative decision, and I would not presume to impute an intent to that body which is so contrary to its consistent delineation between sentence and probation.
Second, I cannot accept the proposition that a nonfinal conviction of a violent felony may be considered as an aggravating *501 circumstance under section 921.141(5)(b), Florida Statutes (1977). This question has not previously been addressed directly by the Court. But see McCrae v. State, 395 So.2d 1145 (Fla. Oct. 30, 1980) (plea of guilty, as opposed to a nonfinal conviction, to a violent felony without adjudication of guilt an aggravating circumstance under section 921.141(5)(b)). For aid in determining what constitutes a "conviction" under this section, I would utilize the interpretation of that term under section 775.084, Florida Statutes (1975), our habitual offender statute, because the purposes of both that statute and section 921.141(5)(b) are similar-to enhance punishment due to prior criminal convictions. Under section 775.084, a prior conviction is not final until appellate review has concluded. Joyner v. State, 158 Fla. 806, 30 So.2d 304 (1947); Garrett v. State, 335 So.2d 876 (Fla. 4th DCA 1976); Coleman v. State, 281 So.2d 226 (Fla. 2d DCA 1973). In view of the similarity in underlying philosophy between the two statutes, and in view of the awesome finality of the death penalty, I would hold that for purposes of section 921.141(5)(b) a prior conviction may not be utilized in aggravation until direct appellate review has concluded. I am unpersuaded by the majority's reliance on the fact that the convictions in this case were affirmed pending this appeal. What if they remained unresolved on the date of this opinion? It occurs to me that the wisdom upon which section 775.084 is bottomed should not be lightly regarded. Because of the unique attributes of the death penalty, we have engaged in a narrow construction of chapter 921 when a question as to its meaning has arisen. See Elledge v. State, 346 So.2d 998 (Fla. 1977) (section 921.141(5), Florida Statutes (1975), construed to permit only consideration of enumerated factors as aggravating circumstances). Adherence to this rule of construction indicates to me that finality of conviction for purposes of section 921.141(5)(b) should be at least as stringent as for section 775.084, where the consequences are not nearly so grave.
ENGLAND, J., concurs in so much of this dissent as would reverse appellant's conviction.
NOTES
[1] "It is quite simply a hallmark of our legal system that juries be carefully and adequately guided in their deliberations." Gregg v. Georgia, 428 U.S. 153, 193, 96 S.Ct. 2909, 2934, 49 L.Ed.2d 859 (1976).
[2] Section 921.141(1), Florida Statutes (1977), provides that during the sentencing proceeding, "evidence may be presented as to any matter that the court deems relevant to sentence... ."
[3] See, e.g., § 921.141(6)(a), (6)(d), (6)(g), Fla. Stat. (1977).
[4] The judge subsequently corrected this finding to show that appellant was nineteen at the time of the crime, although his conclusion that Peek's age was not a mitigating circumstance did not change.
[5] § 921.141(6)(g), Fla. Stat. (1977).