660 So.2d 674 (1995)
Charles W. FINNEY, Appellant,
v.
STATE of Florida, Appellee.
No. 80990.
Supreme Court of Florida.
July 20, 1995.
Rehearing Denied September 18, 1995.
*677 James Marion Moorman, Public Defender, and Steven L. Bolotin, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Carol M. Dittmar, Asst. Atty. Gen., Tampa, for appellee.
*678 PER CURIAM.
Charles W. Finney, a prisoner under sentence of death, appeals his convictions and sentences. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
According to the testimony at trial, Sandra Sutherland was discovered stabbed to death in her apartment shortly after 2 p.m. on January 16, 1991. The victim was found lying face down on her bed. Her ankles and wrists were tied and she had been gagged. On a nightstand near the bed was an open jar of face cream. The lid was lying next to the jar. The victim's bedroom had been ransacked, the contents of her purse had been dumped on the floor, and her VCR was missing.
According to the medical examiner the cause of death was multiple stab wounds to the back. Of the thirteen stab wounds, all but one penetrated the lungs causing bleeding and loss of oxygen, ultimately resulting in death. No bruises or other trauma was observed.
Numerous fingerprints were gathered from the victim's apartment, including prints from a piece of paper with German writing and from the jar on the nightstand. Fingerprints also were taken from the missing VCR, which was located at a local pawn shop. Pawn shop records indicated that the VCR was brought in on January 16 at 1:42 p.m. by Charles W. Finney for a loan of thirty dollars. Finney's fingerprints matched prints taken from the pawn ticket, the VCR, the jar lid, and the paper with German writing.
After it was determined that Finney had pawned the victim's VCR, Detective Bell of the Tampa Police Department interviewed Finney on the afternoon of January 30, 1991. Finney told Bell that he knew the victim due to the fact that they had lived near each other in the same apartment complex. Finney told Bell that he had seen the victim twice since she moved to another apartment in the complex. Once, he had talked to her about putting a screened porch on the back of her new apartment and then about two months prior to the murder he talked to her by the mailboxes at the complex. When asked about his whereabouts on the day of the murder, Finney told Detective Bell that he was home sick all day and never left his apartment. Upon being confronted with the fact that he had pawned the victim's VCR, Finney told the detective he found it near the dumpster when he took out the garbage and then pawned it.
Finney called a witness who testified that the day before the murder he saw the victim arguing with a white male near the mailboxes at the apartment complex. Another defense witness testified that around 10 a.m. on the day of the murder, he saw William Kunkle, who worked as a carpenter at the apartment complex, come out of the victim's apartment. According to the witness, when Kunkle saw him, Kunkle came out of the door very quickly, locked the door with a key, and walked around the corner. The witness's girlfriend offered similar testimony as to Kunkle's conduct. In rebuttal, Kunkle testified that on January 16 he worked in the building next door to Ms. Sutherland's apartment, but had not been in her apartment that day. He denied ever having any conversation or interaction with the victim. The fingerprint examiner also testified during rebuttal that Kunkle's fingerprints did not match those found in the victim's apartment.
The defense sought to recall the medical examiner, Dr. Diggs, to testify that the crime scene was consistent with both a consensual sexual bondage situation and a situation where the victim consented to being bound and gagged out of fear. The State objected to the testimony as speculative. During proffer, Dr. Diggs told the court that whether a bondage situation was consensual was not something that a medical examiner would typically testify about or try to determine. The trial judge disallowed any testimony about the circumstances being consistent with sexual bondage, but allowed Dr. Diggs to testify concerning the probable positions of the victim and of the attacker and about the fact that there were no defensive wounds or other signs of a struggle.
Finney took the stand in his own defense. He testified that he had lived near Ms. Sutherland in the same apartment complex until she moved about eight months prior to the murder. A couple of months after she *679 moved, Ms. Sutherland talked to him about screening in the patio of her new apartment. At that time, she handed him a piece of paper to write down measurements but took the paper back. Finney testified that he returned about a week or two later but Ms. Sutherland had decided not to screen the patio. On that occasion he was in the victim's apartment, helped her move boxes and took various items out of the boxes. According to Finney the last time he saw Ms. Sutherland was a day or two before the murder. She was coming out of her apartment early one morning. She came over to his car and they talked. He further testified that he found the VCR near the dumpsters at the complex and had pawned it the same day for pocket cash. He stated that he did not steal the VCR and that he did not kill Ms. Sutherland.
Finney was convicted of first-degree murder, armed robbery, and dealing in stolen property. The jury recommended death by a vote of nine to three. The trial judge followed the recommendation. The judge found three aggravating factors: 1) Finney previously had been convicted of a violent felony; 2) the murder was committed for pecuniary gain; and 3) the murder was especially heinous, atrocious or cruel.[1] She found five nonstatutory mitigating factors: 1) Finney's contributions to the community as evidenced by his work and military history; 2) Finney's positive character traits; 3) Finney would adjust well to a prison setting and had potential for rehabilitation; 4) Finney had a deprived childhood; and 5) Finney's bonding with and love for his daughter.
Finney raises the following claims in this appeal: 1) there was insufficient evidence to support his convictions and the finding of the pecuniary gain aggravator; 2) the trial court erred in excluding the proffered testimony of Dr. Diggs that the murder scene was consistent with a consensual sexual bondage situation; 3) the trial court erred in denying defense counsel's request that Finney's shackles be removed during the penalty phase; 4) the trial court erred in allowing the victim of the prior violent felony conviction to testify as to the circumstances of that crime; 5) the trial court erred in prohibiting cross-examination of the prior victim regarding her description of her attacker; 6) the trial court erred in denying the request for individual jury instructions on the specific nonstatutory mitigating factors urged; and 7) the trial court erred in instructing on and finding the three aggravating factors and in imposing the death penalty.
First, we find sufficient evidence to support the convictions. There was evidence that Finney pawned Ms. Sutherland's VCR within hours after she was killed and that Finney's fingerprints were found on two items in the victim's apartment  the lid of the face cream jar found on the night stand next to the body and the piece of paper with German writing. According to Finney, he was in possession of the victim's VCR because he found it next to the dumpster at his apartment complex. Further, it could be inferred from his testimony that his fingerprints were on the lid and paper because the victim had handed him a piece of paper to write on and he later helped the victim move and unpack boxes.
In order to convict on this evidence, the State had to present evidence that was inconsistent with Finney's hypothesis of innocence. Cox v. State, 555 So.2d 352 (Fla. 1989). Finney's theory that Kunkle, who was seen leaving the victim's apartment on the morning of the murder, committed the murder was rebutted by Kunkle's testimony that he was not in the apartment and did not kill the victim. In connection with the fingerprints found in the victim's apartment, the State offered expert testimony that fingerprints will be destroyed by subsequent handling and that over time they will be destroyed by the elements.
The State also presented evidence that was inconsistent with Finney's testimony at trial. Detective Bell testified that Finney told him that he was home sick and did not leave his apartment the day of the murder. Finney never mentioned pawning the VCR until confronted with that information. Finney also told the detective that he had seen the victim only twice since she moved to a different *680 apartment, but never mentioned being handed a piece of paper or helping Ms. Sutherland move and unpack boxes. In light of Finney's inconsistent statements concerning his interactions with the victim and his activities on the day of the murder, the jury was free to reject Finney's version of events as unreasonable. Bedford v. State, 589 So.2d 245 (Fla. 1991), cert. denied, 503 U.S. 1009, 112 S.Ct. 1773, 118 L.Ed.2d 432 (1992).
Finney's argument that the State did not present evidence that was inconsistent with every hypothesis except premeditation is based on the proffered testimony of Dr. Diggs that the murder scene was consistent with both consensual sexual bondage that escalated into a homicide and with a situation where the victim submitted to being bound and gagged out of fear. As noted below, the proffered testimony was properly excluded. However, even if the proffered testimony were admissible, Finney's contention that he did not kill the victim was sufficiently inconsistent with the hypothesis that he killed the victim during a consensual sexual encounter gone bad to allow the jury to find premeditation to the exclusion of all other inferences. Cf. Bedford, 589 So.2d at 251 (where expert testified that victim's injuries were consistent with erotic sexual asphyxia, evidence that victim had been bound, gagged, and had abrasions to mouth indicating her attempts to scream, coupled with defendant's prior inconsistent versions of events was sufficient evidence from which jury could find premeditation); Holton v. State, 573 So.2d 284, 289-90 (Fla. 1990) (circumstantial evidence rule does not require the jury to believe defendant's version of events where State has produced conflicting evidence), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991). Moreover, there was sufficient evidence to support a conviction of first-degree felony murder with robbery as the underlying felony.
Finney's contention that the State failed to prove that a robbery occurred because it failed to show that the taking of the murder victim's VCR was anything but an afterthought is without merit. On this record, there is no reasonable hypothesis other than that Finney killed Ms. Sutherland in order to take her property. Ms. Sutherland's VCR was pawned by Finney within hours of the murder; her mother testified that her jewelry box was missing; and there also was testimony that Ms. Sutherland's bedroom was ransacked and the contents of her purse was dumped on the floor. As noted above, Finney never argued to the judge or jury that the victim was killed for some reason other than robbery. The State is not required to rebut every possible hypothesis that can be inferred from the evidence; it need only present evidence that is inconsistent with the defendant's version of events. State v. Law, 559 So.2d 187 (Fla. 1989). Here, the State presented sufficient evidence to support the convictions. Cf. Jones v. State, 652 So.2d 346 (Fla. 1995).
Similarly, we reject Finney's contention that there was insufficient evidence to support the trial court's finding that the murder was committed for pecuniary gain. § 921.141(5)(f). In order to establish this aggravating factor, the State must prove beyond a reasonable doubt that the murder was motivated, at least in part, by a desire to obtain money, property, or other financial gain. See Clark v. State, 609 So.2d 513, 515 (Fla. 1992); Peek v. State, 395 So.2d 492, 499 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). The fact that Finney pawned the victim's VCR shortly after the murder, along with the evidence that Ms. Sutherland's jewelry box was missing and the contents of her purse had been dumped on the floor, supports the finding that the murder was committed for pecuniary gain.
Although we find sufficient evidence to support the pecuniary gain aggravating factor, we agree with Finney that it was error for the trial court to use the facts of Finney's prior violent felony conviction to support its finding of this aggravator. In finding this factor, the trial court relied on testimony of a gift shop owner who was raped and robbed by Finney approximately two weeks after Ms. Sutherland was murdered. The victim of the rape/robbery testified that while she was working in her shop, Finney came in. After looking around and *681 asking about a possible gift, Finney grabbed the shop owner. Although he had a knife, he told the woman he did not want to hurt her, he only wanted money. Finney led her into another room where he tore her blouse and used it to gag her. He then tied her hands behind her back and tied a cord around her mouth to hold the gag. He took money from the cash register and from her purse. Finney then took the woman into a storage room, where he raped her.
In Power v. State, 605 So.2d 856, 864 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1863, 123 L.Ed.2d 483 (1993), the trial court relied on the circumstances of a collateral crime to support its finding of the aggravating factor of "cold, calculated, and premeditated." While we did not squarely address the propriety of the court's actions, we stated that "even if it were permissible for a judge to rely on the circumstances of previous crimes to support the finding of an aggravating factor, such evidence, standing alone, can never establish, beyond a reasonable doubt, that the murder at issue was so aggravated." Id. In this case, the trial court's reliance on the facts of the collateral crime was not error under Power, because, as noted above, there was other evidence supporting this factor.
However, collateral crime evidence should be used as evidence of an aggravating factor only when the other crime evidence tends to prove a material fact necessary to establish the aggravating factor or tends to rebut the defendant's theory as to why the aggravator does not apply; it should not be relied on when its only probative value in relation to the aggravating factor is as proof of the defendant's bad character or propensity. Cf. Wuornos v. State, 644 So.2d 1012, 1019 (Fla. 1994) (collateral crime evidence may be used to undermine defendant's theory as to why pecuniary gain aggravator does not apply), cert. denied, ___ U.S. ___, 115 S.Ct. 1708, 131 L.Ed.2d 568 (1995). In other words, in determining whether to rely on the circumstances of a collateral offense in finding an aggravating factor other than "prior conviction of a violent felony,"[2] a trial court should look to the Williams[3] rule, as codified in section 90.404(2), Florida Statutes (1993),[4] for guidance.
In this case, we question how the fact that two weeks after the murder Finney raped and robbed the gift shop owner, a woman whom he did not know, sheds any light on whether Finney murdered Sandra Sutherland, for pecuniary gain. The trial court in this case relied on the facts of the rape/robbery because of their "striking similarity" to the facts of this case. While we agree with Finney that there is little similarity between the two offenses, other than the fact that both victims were bound, gagged and robbed,[5] this does not end our inquiry.
Although the similarity between the facts of the charged offense and the other crime may serve to enhance the probative value of other crime evidence, similarity is not always a prerequisite to consideration of such evidence. See Williams v. State, 621 So.2d 413, 414 (Fla. 1993); Bryan v. State, 533 So.2d 744, 746 (Fla. 1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989). Overall similarity between the facts of the two offenses generally is necessary before the other crime evidence is considered relevant to the issue of identity. See, *682 e.g., Gore v. State, 599 So.2d 978, 984 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 610, 121 L.Ed.2d 545 (1992); Drake v. State, 400 So.2d 1217, 1219 (Fla. 1981). However, such is not the case when other crime evidence is used to prove motive. For example, other crime evidence would be relevant to prove that there was a pecuniary motive for a murder if the evidence established that at the time of the murder the defendant needed money for some reason, such as the payment of a debt. Accord United States v. Beechum, 582 F.2d 898, 915 n. 15 (5th Cir.1978), cert. denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Thus, the other crime evidence relied on here could have been used to support the finding of "pecuniary gain" if there was something about the facts of the other crime that made the evidence probative of the defendant's motive for the murder, other than the fact that it tended to prove propensity to commit robbery.
In this case, the victim of the rape/robbery was not murdered and there was nothing about that crime that tends to explain why Finney murdered Ms. Sutherland.[6] It is impossible to infer from the circumstances of the rape/robbery that Finney murdered Ms. Sutherland in order to obtain money, property, or other financial gain. However, on this record, consideration of the other crime evidence was harmless beyond a reasonable doubt, as there is no reasonable possibility that the trial judge would have rejected this aggravator in the absence of the other crime evidence. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Next, we turn to Finney's second claim that the trial court erred in refusing to allow the medical examiner to testify concerning consensual bondage. The defense sought to offer Dr. Diggs' testimony that the murder scene was consistent with both a consensual sexual bondage situation and a situation where the victim submitted to being bound and gagged out of fear. The court allowed Dr. Diggs to testify concerning the probable positions of the victim and the killer and the lack of defensive wounds. However, the court excluded the proffered testimony concerning sexual bondage, determining that such testimony would be "speculation," "would not be expert opinion," and would be "misleading."
A trial court has broad discretion in determining the range of subjects on which an expert witness can testify, and, absent a clear showing of error, the court's ruling on such matters will be upheld. Burns v. State, 609 So.2d 600, 603 (Fla. 1992). We find no abuse of discretion here.
During proffer, Dr. Diggs testified that when he sees this type of restraint situation two possibilities come to mind: 1) that the victim submitted to being bound and gagged out of fear or 2) that some sort of consensual bondage situation occurred. However, when questioned by the court, Dr. Diggs stated that he could testify as to the probable positions of the victim and the perpetrator and as to whether there were defensive wounds, but he could not testify as to whether a bondage situation might have been consensual or forced. According to Dr. Diggs, such matters are beyond a medical examiner's expertise. Dr. Diggs later told the court that it would not be expert opinion, but rather "total speculation" for him to testify concerning whether the scene was consistent with either scenario. The record clearly supports the trial court's ruling.
We also reject Finney's claim that the trial court erred when it failed to inquire into the reasons why he was shackled during the penalty phase of the trial. Finney relies on this Court's decision in Bello v. State, 547 So.2d 914 (Fla. 1989). In Bello, we held that where defense counsel objects to and requests inquiry into the necessity for shackling the defendant during the penalty phase of a capital trial, the trial court must not defer to the sheriff's apparent judgment that such restraint is needed without first inquiring *683 into the reasons for that decision. 547 So.2d at 918.
At the beginning of the penalty phase in this case, defense counsel requested that Finney's shackles be removed. The judge asked, "That is a security measure that the Sheriff's Office would like?" To which the bailiff responded, "Yes." The judge then denied defense counsel's request and pointed out that the shackles were obscured by a board and could be removed during a recess before Finney took the witness stand. Defense counsel responded that Finney had agreed to behave throughout the proceeding. The judge then told counsel that the decision was in the sheriff's area of expertise and she would support that decision. No further inquiry was made.
Unlike defense counsel in Bello, counsel in this case acquiesced to proceeding without further inquiry. No objection was made to the court's decision to defer to the sheriff on the matter, nor did counsel request that the court inquire into the reasons for the sheriff's decision. Because the specific claim raised here was never raised to the trial court, the claim is not preserved for appeal. Harmon v. State, 527 So.2d 182, 185 (Fla. 1988); Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982).
Next, we address Finney's claim that the rape/robbery victim should not have been allowed to testify about the facts underlying the prior convictions, because her testimony was inflammatory and unnecessarily prejudicial in light of the fact the same information could have been presented by a detective. It is clear that relevant evidence concerning the circumstances of a prior violent felony conviction is admissible in a capital sentencing proceeding, unless admission of the evidence would violate the defendant's confrontation rights, or the prejudicial effect of the evidence clearly outweighs its probative value. Duncan v. State, 619 So.2d 279, 282 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 453, 126 L.Ed.2d 385 (1993); Rhodes v. State, 547 So.2d 1201, 1204-05 (Fla. 1989). However, the details of the collateral offense must not be emphasized to the point where that offense becomes the feature of the penalty phase. Duncan; Stano v. State, 473 So.2d 1282 (Fla. 1985), cert. denied, 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986).
Finney points out that the victim of the collateral offense was allowed to testify extensively as to what occurred and, at one point in her testimony, became visibly upset. Our review of the record leads us to conclude that, under the circumstances, the testimony was not unduly prejudicial. Cf. Stewart v. State, 558 So.2d 416, 419 (Fla. 1990) (not error to allow victims of prior violent felonies resulting in convictions to testify concerning facts of prior offenses where testimony was not unduly prejudicial). The victim's testimony was the only evidence of the circumstances resulting in the prior conviction. The testimony was not overly emotional; nor was it made the focal point of the proceedings. When the witness became upset, a recess was called and it is unclear whether the jury even noticed her lack of composure. Moreover, following the testimony, the court cautioned the jury that sympathy should play no part in its deliberations.
While the State did not unduly emphasize the victim's testimony during closing argument, the prosecutor did refer to the collateral crime as "disgusting." Defense counsel objected to the comment. However, the objection was not based on the ground raised here  prejudicial effect of testimony and argument concerning prior convictions. Rather, defense counsel objected and moved for a mistrial contending that the prosecutor was improperly "arguing his personal views." Thus, the portion of this claim challenging the State's argument is procedurally barred. Steinhorst. Moreover, even if the issue had been properly preserved, the argument was not so egregious as to warrant reversal. Stano.
Although the testimony elicited here from the victim of the rape/robbery was not unduly prejudicial, we take this opportunity to point out that victims of prior violent felonies should be used to place the facts of prior convictions before the jury with caution. Cf. Rhodes, 547 So.2d at 1204-05 (error to present taped statement of victim of prior violent felony to jury, where introduction of tape violated defendant's confrontation rights *684 and the testimony was highly prejudicial). This is particularly true when there is a less prejudicial way to present the circumstances to the jury. Cf. Freeman v. State, 563 So.2d 73, 76 (Fla. 1990) (surviving spouse of victim of prior violent felony should not have been permitted to testify concerning facts of prior offense during penalty phase of capital trial where testimony was not essential to proof of prior felony conviction), cert. denied, 501 U.S. 1259, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991). Caution must be used because of the potential that the jury will unduly focus on the prior conviction if the underlying facts are presented by the victim of that offense.
Testimony concerning the circumstances that resulted in a prior conviction is allowed to assist the jury in evaluating the defendant's character and the weight to be given the prior conviction so that the jury can make an informed decision as to the appropriate sentence. Rhodes, 547 So.2d at 1204. However, the collateral offense need not be "retried" before the capital jury, in order to accomplish that goal. Evidence that may have been properly admitted during the trial of the violent felony may be unduly prejudicial if admitted to prove the prior conviction aggravating factor during a capital trial. This is particularly true where highly prejudicial evidence is unnecessary, or where the evidence is likely to cause the jury to feel overly sympathetic towards the prior victim. See, e.g., Duncan, 619 So.2d 279 (error to admit gruesome photograph of victim of prior unrelated murder for which defendant had been convicted where photograph was unnecessary to support aggravating factor); Freeman, 563 So.2d at 75 (error to allow surviving spouse of victim of prior violent felony to testify concerning facts of prior offense where testimony was not essential to proof of prior felony conviction).
We also find no merit to Finney's claim challenging the trial court's refusal to allow him to cross-examine the rape/robbery victim about her initial description of her attacker. The claim is not properly before the Court because Finney never proffered the testimony he sought to elicit from the witness and the substance of that testimony is not apparent from the record. § 90.104(1)(b), Fla. Stat. (1991); Lucas v. State, 568 So.2d 18, 22 (Fla. 1990) (proffer necessary to preserve claim that trial court improperly excluded testimony). Without a proffer it is impossible for the appellate court to determine whether the trial court's ruling was erroneous and if erroneous what effect the error may have had on the result. See Ketrow v. State, 414 So.2d 298 (Fla. 2d DCA 1982). Moreover, Finney never questioned the validity of the prior conviction and, as the trial court noted, it is not appropriate to go behind the jury's verdict in the prior case and attempt to retry those convictions. In any event, neither Finney's due process right under the Fourteenth Amendment nor his Sixth Amendment right to cross examine this witness were violated, as he had every opportunity to bring out any facts from the collateral offense that may have minimized his behavior or otherwise lessened the aggravating weight of the prior conviction.
This Court has repeatedly rejected Finney's next claim that the trial court must give specific instructions on the non-statutory mitigating circumstances urged. See, e.g., Jones v. State, 612 So.2d 1370 (Fla. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 112, 126 L.Ed.2d 78 (1993); Robinson v. State, 574 So.2d 108 (Fla.), cert. denied, 502 U.S. 841, 112 S.Ct. 131, 116 L.Ed.2d 99 (1991). We also find no merit to Finney's claim that the trial court erred in instructing on and finding the three aggravating factors at issue here.
As noted above, there was sufficient evidence for both an instruction on and a finding of the pecuniary gain aggravator. Finney's claim that the pecuniary gain factor cannot be used to aggravate a felony-murder conviction based on an underlying felony of robbery is equally without merit. Even assuming Finney's conviction was based solely on a felony-murder theory, we have repeatedly rejected similar claims. See, e.g., Stewart v. State, 588 So.2d 972 (Fla. 1991), cert. denied, 503 U.S. 976, 112 S.Ct. 1599, 118 L.Ed.2d 313 (1992); Clark v. State, 443 So.2d 973 (Fla. 1983), cert. denied, 467 U.S. 1210, 104 S.Ct. 2400, 81 L.Ed.2d 356 (1984).
Finney's challenge to the prior violent felony conviction aggravator is based on his contention *685 that if his prior convictions are reversed on appeal the trial court's reliance on this factor will be considered reversible error. This claim is rendered moot by the Second District Court of Appeal's November 9, 1994 per curiam opinion affirming the prior convictions. Finney v. State, 645 So.2d 465 (Fla. 2d DCA 1994).
Finney's challenge to the heinous, atrocious or cruel aggravating factor also is without merit. There was testimony that the victim was bound, gagged and stabbed thirteen times in the back. According to the medical examiner, the victim was alive throughout the attack and ultimately died from drowning in her own blood. While the medical examiner could not say how long she lived, he made it clear that the victim was conscious and able to feel at least the first few stab wounds. This Court has consistently upheld findings of heinous, atrocious or cruel where the victim was repeatedly stabbed. See, e.g., Pittman v. State, 646 So.2d 167 (Fla. 1994); Atwater v. State, 626 So.2d 1325 (Fla. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994); Nibert v. State, 508 So.2d 1 (Fla. 1987); Lusk v. State, 446 So.2d 1038 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).
Finally, we have compared this case to other death penalty cases and find that death is proportionately warranted here. Cf. Hudson v. State, 538 So.2d 829 (Fla.) (death appropriate for defendant who entered exgirlfriend's home armed with a knife and stabbed girlfriend's roommate to death, where court found previous conviction of a violent felony and committed during an armed burglary in aggravation and under extreme mental or emotional disturbance, impaired capacity to conform to requirements of law, and defendant's age in mitigation), cert. denied, 493 U.S. 875, 110 S.Ct. 212, 107 L.Ed.2d 165 (1989).
Accordingly, having found no reversible error, we affirm the convictions and sentences.
It is so ordered.
GRIMES, C.J., and OVERTON, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
SHAW, J., concurs in result only as to the conviction and concurs as to the sentence.
NOTES
[1] § 921.141(5)(b), (f), (h), Fla. Stat. (1991).
[2] Evidence of the circumstances of a violent or capital felony may be considered in connection with the "prior violent felony" aggravator in accordance with this Court's decision in Rhodes v. State, 547 So.2d 1201, 1204-05 (Fla. 1989).
[3] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[4] Section 90.404(2)(a), Florida Statutes (1993), provides:

Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but is inadmissible when the evidence is relevant solely to prove bad character or propensity.
[5] Although both victims were bound, gagged and robbed, there were numerous dissimilarities. For example, the victim of the collateral offense did not know Finney, but Ms. Sutherland did. The victim of the collateral offense was robbed and raped while working at her place of business, whereas Ms. Sutherland was murdered in her bedroom.
[6] In her sentencing order, the trial judge states that Finney stole the money from the rape/robbery victim because he needed it to purchase cocaine. Even if it could be inferred that if Finney needed money for cocaine when he robbed the store owner he likewise was in need of money for cocaine two weeks earlier when he murdered Ms. Sutherland, we can find nothing in the record to support this finding.