380 So.2d 524 (1980)
Stephen Edward HARKINS, Appellant,
v.
STATE of Florida, Appellee.
Nos. 78-124/T4-47, 78-774/T4-47A.
District Court of Appeal of Florida, Fifth District.
February 27, 1980.
*525 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Chief, App. Div., Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Edwin H. Duff, III, Asst. Atty. Gen., Daytona Beach, for appellee.
COBB, Judge.
Appellant was tried by jury and found guilty of second-degree felony murder, kidnapping *526 and two counts of sexual battery. He appeals from the judgments and sentences.
Young Arnold Trossman was murdered between 8:00 p.m. December 23 and 1:00 p.m. December 24, 1976. The body was found in a motel room bed, mangled by fifteen superficial nicks and twenty-five deeper stab wounds penetrating heart, liver and lungs. The only article of clothing was a scarf tied around the neck. Ropes draped about the four corners of the bed appeared to be a restraining device which would have tightened the more the victim struggled. There were rope burns on the wrists and ankles. Medical examination disclosed an unusually dilated anus and semen in the rectal cavity and mouth.
The state's evidence included a letter taken from the victim's billfold which was found in the motel room. Addressed to "Babe," the letter purported to be from a young lady named "Jessica" offering to have sex. The Jessica letter said she had given money to a man at a record shop named Dave who offered to get the motel room and drive Babe home. An investigating officer testified that appellant had admitted writing the letter, giving it to the victim, driving the victim to the motel, and telling the victim en route that appellant was the Dave in the letter.
There was other physical evidence tying appellant to the scene, as well as a motel maid's identification of appellant as the man she had seen walking past the victim's motel room the morning before the body was discovered.
In addition, a maintenance man testified to having received letters from appellant, purportedly from a girl named Jessica, offering to have sex and relating a fantasy of tying the maintenance man to a bed, blindfolding him and performing sex acts. Appellant was to have met the maintenance man at a motel to prepare him for the fantasy. The letters were thrown away prior to the maintenance man's contacting the police.
The first point on appeal concerns admission of an investigating officer's testimony about visiting a Chicago establishment selling paraphernalia for "masochistic homosexual type situations," with a man for whom appellant said he had worked. Appellant also challenges admission of testimony from a young male runaway who met appellant at a record shop three weeks after the murder. Appellant offered the runaway a room at a motel across the street from the earlier victim's motel, drove them there the next day, and registered under the name of Dave. Due to the runaway's intervening contact with the police, police officers arrived soon after appellant and the runaway entered the motel room.
Appellant argues that the investigating officer's testimony was irrelevant and prejudicial, that whether or not appellant knew someone who frequented the establishment had no value in showing that appellant went there. The state argues that the officer's testimony was relevant to identify the murderer. Where identity is at issue, relevant evidence is admissible. See Henderson v. State, 304 So.2d 537 (Fla.3d DCA 1974). The present facts are distinguishable from cases such as Akers v. State, 352 So.2d 97 (Fla.4th DCA 1977), where there was no link between the evidence of contraband found in the victim's car and the defendant. We find no reversible error in the admission of the officer's testimony. The somewhat tenuous link was appellant's admitted former employment by a professional pimp who procured for male prostitutes, the man who took the investigating officer to the Chicago establishment. The testimony was relevant to identify appellant as the perpetrator in a crime where masochistic paraphernalia were found and homosexual activities occurred. Even if the prejudicial impact outweighed probative value, admission of the officer's testimony was harmless error due to the eyewitness testimony and physical evidence tying appellant to the crime scene, as well as the former employment testimony upon which a determination of homosexuality could have been based.
*527 Appellant argues that the runaway's testimony was irrelevant and was introduced only for the purpose of showing bad character and a propensity to molest young boys, contrary to the Williams rule. See Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). However, we agree with the state and hold that the runaway's testimony presented sufficient similar facts showing an identifying pattern of behavior so as to pass the threshold of admissibility. Compare Ashley v. State, 265 So.2d 685, 693-94 (Fla. 1972); Andrews v. State, 172 So.2d 505 (Fla. 1st DCA 1965). There were enough similarities between the crime and the incident with the runaway to distinguish this case from cases cited by appellant where admission of collateral offense evidence was held to be erroneous. See Helton v. State, 365 So.2d 1101 (Fla. 1st DCA 1979); Henry v. State, 356 So.2d 61 (Fla. 4th DCA 1978). Here, an additional factor, beyond proximity in location and time as well as similar type of victim, not found in Helton and Henry, supra was the use of the false identity, "Dave." An additional distinction from Helton and Henry was the presence of additional pattern of behavior testimony from a maintenance man who received a Jessica letter from appellant.
As for the second point, we find no error in the trial court's refusal to grant a continuance. Generally, a trial court may properly refuse a continuance when the testimony which would later be produced would only tend to impeach, especially where the result would be the same. Samuels v. State, 123 Fla. 280, 166 So. 743 (1936); Durcan v. State, 350 So.2d 525 (Fla.3d DCA 1977); Machin v. State, 213 So.2d 499 (Fla.3d DCA 1968), cert. denied 221 So.2d 747 (Fla. 1968). Here the trial court denied a defense request to reopen the case the next day in order to introduce the testimony of the maintenance man's employer, who was attending a funeral. The employer allegedly would have testified that he fired the maintenance man after receiving complaints from appellant's family, and that he told the maintenance man the reason for his termination. However, at trial the maintenance man denied being fired and denied any animosity towards appellant's family. His testimony was corroborated by two friends who saw the letters. Additionally, members of appellant's family were available at trial for questioning as to any complaints and animosity. We hold there was no abuse of discretion by the trial court in refusing to grant a continuance where the testimony to be impeached was corroborated, alternate witnesses who could have impeached were available, and the result would have likely been the same. See Samuels, supra.
The third point raised by the appellant is the most difficult. He contends that any detention or confinement of Trossman in the motel room or on the bed was merely incidental to the acts leading to the sexual batteries and death. Although conceding that the element of asportation has been deleted from the law in Florida, appellant argues that the kidnapping conviction cannot stand without some independent foundation. There is ostensible support for this position in the case law of other states. See, e.g., People v. Adams, 389 Mich. 222, 205 N.W.2d 415 (1973); People v. Daniels, 71 Cal.2d 1119, 80 Cal. Rptr. 897, 459 P.2d 225 (1969); People v. Levy, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 104 N.E.2d 842 (1965).
In State v. Buggs, 219 Kan. 203, 547 P.2d 720 (1976), the Kansas Supreme Court construed the scope of its kidnapping statute, K.S.A. 21-3420, which is similar in many respects to section 787.01, Florida Statutes (1975).[1]
*528 The Kansas court construed its statute as requiring no particular distance of removal, nor any particular time or place of confinement. The fact, not the distance, of a taking supplies a necessary element of kidnapping. That taking must be by a proscribed means and also with a specific intent to accomplish one of the four enumerated objectives. The Florida statute is the same.
It is at this point of the second type of intent  i.e., holding the victim to facilitate commission of a felony  that there is a divergence between the Kansas view and the case law in the other states. In New York, California and Michigan it is held that if the only purpose of a taking or holding of a victim is to facilitate a lesser crime, the taking is "merely incidental" to that crime and the kidnapping statute does not cover it. The Kansas court rejects this rationale because of the clear wording of its statute in subsection (b) thereof.
We agree with the Kansas interpretation as applied to the Florida statute.
But the inquiry, as pointed out in Buggs, does not end at that point. The Kansas court observes that its statute, in subsection (2), sets forth an intent "to facilitate commission of any crime." A lengthy discussion of the proper construction of the word "facilitate" follows, culminating with the enunciation of certain restrictions in application of the statute in respect to taking or confining another person with the intent to facilitate commission of another crime.
The Florida statute is broader and less restrictive in one important respect. The intent listed in subsection (2) of section 787.01(a) is: "Commit or facilitate commission of any felony." (Emphasis added.) Nevertheless, we do not believe that the Florida Legislature intended to convert every first degree robbery and every forcible rape into two life felonies. Therefore, we construe section 787.01, Florida Statutes, to mean that "confining, abducting, or imprisoning another person ... with intent to commit or facilitate commission of any felony" does not include movement or confinement that is inconsequential or inherent in the nature of the felony. The examples cited in Buggs, supra at 731, are apposite and quoted here with approval:
A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is. The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is.
Applying these principles and the statutory language to the instant facts, we find uncontroverted evidence that Trossman was confined to the motel bed by restraining ropes. The appellant's argument that this procedure "had less to do with detention than with the sexual fantasies of the perpetrator" is unconvincing. The fact is that Trossman was tied to the bed, sexually assaulted and stabbed to death. The roped confinement was neither inconsequential nor inherent in the felonies of sexual battery and second degree murder. Cf. Spencer v. State, 332 So.2d 30 (Fla. 1st DCA 1976).
Moreover, there was overwhelming evidence to support the specific intent set forth in subsection (3) of the statute: "Inflict bodily harm upon or to terrorize the victim... ." Trossman suffered twenty-five significant stab wounds and fifteen superficial nicks.
As for the fourth point, appellant was convicted and sentenced for both second degree felony murder and the underlying felony of anal sexual battery. In State v. Pinder, 375 So.2d 836, 839 (Fla. 1979), the supreme court recently held that a defendant may not be convicted and sentenced for both felony murder and the underlying felony where premeditated murder is charged, but the only evidence to sustain the murder conviction is furnished by proof that the killing occurred as the result of the underlying felony. See also Mahaun v. State, 377 So.2d 1158 (Fla. 1979).
*529 Accordingly, the conviction and sentence for anal sexual battery are reversed. The convictions and sentences for second degree felony murder, kidnapping and oral sexual battery are affirmed.
AFFIRMED in part; REVERSED in part.
DAUKSCH, C.J., and SHARP, J., concur.
NOTES
[1] The Kansas statute provides:

Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:
(a) For ransom, or as a shield or hostage; or
(b) To facilitate flight or the commission of any crime; or
(c) To inflict bodily injury or to terrorize the victim or another; or
(d) To interfere with the performance of any governmental or political function.