419 So.2d 810 (1982)
Albert SOREY, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-2465.
District Court of Appeal of Florida, Third District.
September 28, 1982.
*811 Bennett H. Brummer, Public Defender and Michael L. Van Zamft, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Steven R. Jacob, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
Sorey challenges his convictions for assorted crimes arising out of an armed holdup of a Burger King restaurant upon the essential ground that the sole evidence to establish the identity of Sorey as a perpetrator of the crimes was his fingerprints, which, he contends, were not shown by the State to have been made only at the time the crime was committed. Sorey separately challenges his convictions for kidnapping of the robbery victims, contending that the confinement of the victims, who were placed on the floor and bound with ropes, was merely incidental to, inherent in, and of no significance independent of the crime of robbery.
We quickly dispose of Sorey's challenge to the kidnapping convictions. The evidence shows that after the contents of the store safe had been removed, the four Burger King employees were made to lie on the floor of the restaurant where each had his hands tied behind his back and his feet tied together by Sorey and his confederate. The defendants departed and the bound victims were later found.
Sorey's act of tying the victims to facilitate his escape and lessen the risk of detection constitutes kidnapping, even applying the most stringent interpretation of Florida's kidnapping statute. See Harkins v. State, 380 So.2d 524 (Fla. 5th DCA 1980), and its progeny, Carron v. State, 414 So.2d 288 (Fla. 2d DCA 1982); Simpkins v. State, 395 So.2d 625 (Fla. 1st DCA 1981); Friend v. State, 385 So.2d 696 (Fla. 1st DCA 1980); compare Gilley v. State, 412 So.2d 68 (Fla. 1st DCA 1982); Faison v. State, 399 So.2d 19 (Fla. 3d DCA 1981). In Harkins, the court held that tying the victim to the bed where he was sexually assaulted and stabbed to death was not incidental to and inherent in the sexual assault and murder and thus independently established the offense of kidnapping.[1] Of course, under the broader view of the kidnapping statute which we espoused in Faison v. State, supra, Sorey's argument fares even worse. Accord, Dowdell v. State, 415 So.2d 144 (Fla. 1st DCA 1982) (requiring store manager at gunpoint to re-enter rear door of store and crawl to safe in front constitutes movement and confinement which served to lessen risk of detection and made out an offense under kidnapping statute).
We turn now to Sorey's argument that the circumstantial fingerprint evidence was insufficient to sustain the jury's finding of guilt and that he was entitled to a judgment of acquittal. The record reflects that one of the two robbers ordered the shift manager, Mr. Casebolt, to take him back to the safe located in a rear room, a non-public part of the restaurant. There the offender, his hands bared, reached into the safe, removed money and envelopes and placed them in a bag. Casebolt, in charge of the restaurant at the time of the robbery, testified that the envelopes contained instructions for gift certificate programs conducted by Burger King, were kept in the top compartment of the safe, had been there approximately two weeks, and, to the best of his knowledge, were inaccessible to the *812 public. No manager from any other shift testified. Moments after the robbers left the restaurant a police officer in a patrol car spotted them. One had a bundle in his hand, which he threw down when the officer gave chase. Although the officer was unsuccessful in apprehending the robbers, the bag was recovered from a flowerbed some fifty feet from the Burger King and within an hour and a half of the robbery. One envelope found therein contained a fingerprint which matched Sorey's.
Sorey's basic thesis is that there were four persons who managed the Burger King on different shifts, each one with access to the safe, and that no testimony was elicited from the three managers who were absent when the crimes occurred to dispel the possibility that the envelope was removed from the safe and left out in the main and public part of the restaurant where a customer, perhaps Sorey, could have touched it. Thus, he says, the evidence does not exclude every reasonable hypothesis of innocence and is thereby insufficient for conviction.
Where, as here, fingerprint evidence is the sole evidence relied upon to establish that the defendant was the perpetrator of the crime, it is said that "the circumstances must be such that the print could have been made only at the time the crime was committed."[2]Tirko v. State, 138 So.2d 388, 389 (Fla. 3d DCA 1962). The determination of whether the circumstances are such that the print could have been made only at the time the crime was committed is to be made by the fact-finder, Roberts v. State, 268 So.2d 578 (Fla. 3d DCA 1972), provided that the court, viewing the evidence in a light most favorable to the State, M.R. v. State, 399 So.2d 56 (Fla. 3d DCA 1981), has first determined that a reasonable-minded jury could find the guilt of the defendant beyond a reasonable doubt. In the Interest of G.B.S., 417 So.2d 1181 (Fla. 4th DCA 1982); Amato v. State, 296 So.2d 609 (Fla. 3d DCA 1974). Thus, in a case where fingerprint evidence is the sole evidence relied upon to establish the identity of the defendant as the perpetrator of the crime, the court, viewing the evidence most favorably to the State, must decide whether reasonable-minded jurors could find beyond a reasonable doubt that the fingerprints were made at the time the crime was committed.[3]
Where the sole evidence linking a defendant to the crime is fingerprints found in a place or on a thing accessible to the general public and there is no other evidence to show that the prints were made at the time of the crime, see, e.g., Williams v. State, 247 So.2d 425 (Fla. 1971), courts must conclude that a defendant is entitled to a judgment of acquittal. For example, in Ivey v. State, 176 So.2d 611 (Fla. 3d DCA 1965), evidence that the defendant's fingerprint was found on a glass jalousie on the front door of a store building was held insufficient to support a jury finding of *813 guilt "because the print was in a public place and the record does not preclude that it might have been placed there sometime before the crime." Id. at 612. Moreover, when the place where the print is found is as accessible to the general public as a store front, the testimony of the store owner that he never saw the defendant at the store does not overcome the insufficiency. Ivey v. State, supra. See Dixon v. State, 216 So.2d 85 (Fla. 2d DCA 1968) (where a print is left in a place open to the public and there is no other evidence of identity, the courts must assume that a defendant was shopping rather than stealing). Similarly, in Wilkerson v. State, 232 So.2d 217 (Fla. 2d DCA 1970), fingerprints found on broken glass near and from the front glass door of a clothing shop which had been smashed in a burglary were insufficient to establish that the defendant committed the burglary. Since the front door was accessible to the general public, the prints might have been placed on the glass sometime before the glass was broken in the burglary.[4],[5] And in A.V.P. v. State, 307 So.2d 468 (Fla. 1st DCA 1975), where the juvenile's fingerprints were on a soft drink bottle filled with gasoline and found in the vicinity of the arson, the assumption was indulged that the print could have been made at a time unconnected with the arson, presumably because a soft drink bottle is by its nature an object which may be discarded after use, and as such may bear the prints not only of a user, but any member of the public who may thereafter come upon it.
The hypothesis of innocence, that prints were made at a time other than the time of the crime, is then reasonable as a matter of law where the prints are found in a place or on a thing which is accessible to the general public and where there is no other evidence to show that the prints were made at the time of the crime. Where, however, the prints are located in a place, on an object, or on a particular part of an object to which the general public does not have access, the hypothesis that the print was not placed on the object at the time of the crime is not one which the court must declare reasonable as a matter of law, and it remains for the jury to determine its reasonableness. This is so because in the latter instance we need not assume that the defendant as a member of the general public placed his fingerprint at the place or on the object at a time other than the crime. Therefore, when the State proves that the print was found in a place or on a thing not accessible to the general public, such proof, standing alone, is legally sufficient, and the jury may infer from it that the print was made at the time of the crime.[6]See Dargans v. State, 259 So.2d 782 (Fla. 2d DCA 1972) (defendant's fingerprints found on bottom of beer carton which, on heels of break-in, was found outside of burglarized store; since bottom of the beer carton is normally inaccessible to store customers, evidence of the defendant's identity as the perpetrator of the break-in was sufficiently established)[7]; Roberts v. State, supra (defendant's *814 fingerprints found on kitchen doorjamb, cigarette lighter in bedroom, and windowsill in front bedroom were sufficient to establish that prints made at time of crime).
If, however, the defendant shows through testimony that he, unlike a member of the general public, had access to the place or object at a time other than the time of the crime so as to reasonably explain the existence of his prints, the version of events related by the defense must be accepted as true unless contradicted by other proof showing the defendant's version to be false. Jaramillo v. State, 417 So.2d 257 (Fla. 1982). See McArthur v. State, 351 So.2d 972 (Fla. 1977); Mayo v. State, 71 So.2d 899 (Fla. 1954); Holton v. State, 87 Fla. 65, 99 So. 244 (1924). Thus, where the defendant's fingerprints were found on candlestick holders, a pitcher, a plate and the back of an inside doorknob in a residence owned and occupied by a husband and wife, the hypothesis of innocence raised by the defendant's testimony that he had visited in the home in the wife's presence some ten days before was not overcome by the husband's testimony that "as far as he knew," the defendant had never been inside the house. Williams v. State, 308 So.2d 595 (Fla. 1st DCA 1975).[8] But where the defendant's fingerprint was found on the lower drawer of a file cabinet located in that part of the dentist's office to which patients did not ordinarily have access, the defendant's testimony that he had been to the dentist's office months before the alleged break-in for a tooth extraction and rested on a couch close to the cabinet while recovering from the extraction did not entitle the defendant to a judgment of acquittal, where the dentist testified he had no recollection of the defendant being a patient. Summerson v. State, 200 So.2d 594 (Fla. 3d DCA 1967).[9]
But Sorey presented no testimony to explain how his prints got on the Burger King envelope at a time other than the time of the crime. The State, having shown the envelope to be in a place inaccessible to a member of the public such as Sorey, was not obliged to contradict defense counsel's unsupported hypothesis that a manager of Burger King removed the envelope from the safe, brought it to a place where the defendant was, and the defendant touched it.[10] While Sorey's counsel was free to *815 make this argument, the jury was free to reject the reasonableness of his hypothesis. It did exactly that, and we affirm.
Affirmed.
NOTES
[1] Significantly, the court in Harkins quoted with approval a distinction set forth in State v. Buggs, 219 Kan. 203, 547 P.2d 720 (1976);

"The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is." Harkins v. State, 380 So.2d at 528.
This distinction led to the no-kidnapping result in Friend where the confinement consisted of ordering the employees into a bathroom, telling them to stay there, and shutting but not locking the door. Presumably, Friend would have been decided differently if the bathroom door had been locked. Compare Ayendes v. State, 385 So.2d 698 (Fla. 1st DCA 1980). The confinement in Simpkins was not for the purpose of lessening the risk of detection or facilitating escape.
[2] Where, however, fingerprints are not the sole evidence to establish the identity of the defendant as the perpetrator, this rule does not apply. See Bryant v. State, 235 So.2d 721 (Fla. 1970) (fingerprints found on telephone extension in public coin laundry admissible to corroborate identity of defendant as perpetrator otherwise established by similar act evidence); Engdall v. State, 319 So.2d 144 (Fla. 4th DCA 1975) (although affirmed without opinion, facts set forth in dissent indicate that fingerprints found on several day-old rolled-up newspapers in burglarized apartment apparently found admissible to corroborate identity of defendant as perpetrator otherwise established by similar act evidence); State v. Perry, 297 So.2d 638 (Fla. 2d DCA 1974) (fingerprints found on glassine envelopes containing heroin admissible to corroborate identity of defendant as perpetrator otherwise established by his presence in vehicle from which packets appeared to have been thrown); Dixon v. State, 216 So.2d 85 (Fla. 2d DCA 1968) (fingerprints found on TV sets which had been on public display in store admissible to corroborate identity of defendant as perpetrator otherwise established by evidence that TV sets were found in his car).
[3] To say, as in Tirko, that the circumstances must be such that the print could have been made only at the time the crime was committed is the equivalent of saying that the circumstances must be such that a reasonable jury could find beyond a reasonable doubt that the prints were made at the time the crime was committed, or that a reasonable jury could find that the evidence excludes the reasonable hypothesis of innocence, that is, that the prints were not made at the time the crime was committed.
[4] In Wilkerson, the court points out that the glass door was broken at 1:45 a.m. and the prints taken at 3:30 a.m. That fact would be relevant only if the prints could not have been placed on the glass before it was broken.
[5] Perhaps the most generous view of place accessible to the general public is found in Knight v. State, 294 So.2d 387 (Fla. 4th DCA 1974), where the court held that the defendant's fingerprint found at the base of a service bay door of a gasoline service station was, because the door was in reach of customers, insufficient proof to sustain the defendant's conviction.
[6] But see State v. Hayes, 333 So.2d 51 (Fla. 4th DCA 1976), where the court, despite the absence of any testimony to explain the existence of the defendant's prints on a jalousie slat found in the bushes near the burglarized home, see discussion infra, speculated that since the house was for sale and had been burglarized three weeks earlier, the prints could have been made when the defendant was being shown the house by the realtor, when he independently viewed the house, when the house was burglarized previously, or when he picked up the jalousie in the bushes. While all of these are certainly hypotheses of innocence which a jury might find reasonable, they are not, in the case of a private residence, reasonable as a matter of law so as to require acquittal.
[7] In our view, Dargans cannot be read as a case in which the defendant's identity was otherwise established, since the only other proof was that the defendant and a car in which he was found a short time after the break-in "fit the description" of the burglar and the car which left the scene. Nor can Dargans be classified as a case where independent proof established that the prints were made at the time of entry despite the storeowner's testimony that he was present from the time of the delivery to the time of the break-in and, presumably, had never seen the defendant in the store. If the print were found in a place on the carton accessible to the general public, the owner's testimony that he never saw the defendant would not overcome the hypothesis that the print was made by the defendant as a customer. See Ivey v. State, supra.
[8] It is apparent that since the conclusion in Williams was that the evidence was insufficient to establish the defendant's guilt, the court's remand for a new trial was inappropriate. See Tibbs v. State, 397 So.2d 1120 (Fla. 1981); McArthur v. Nourse, 369 So.2d 578 (Fla. 1979). See also Jaramillo v. State, supra, where, based on the same conclusion, the court ordered the defendant discharged.
[9] But see J.C. v. State, 377 So.2d 731 (Fla. 3d DCA 1979), where despite burglary victim's testimony that defendant, who admittedly had been to the home to visit victim's son, never had access to the point of entry, a utility room door where the prints were found, and had not been to the house for a week prior to the break-in, the court held the evidence insufficient as failing to exclude the reasonable hypothesis that the "energetic and inquisitive propensities" of the youth led him to the utility room door at a time other than the time of the crime. While this hypothesis might very well be one which a jury could accept, the fact remains that because it was contradicted by the victim's testimony, it was not reasonable as a matter of law so as to require acquittal.
[10] Sorey's counsel, in closing argument to the jury, stated:

"The manager, Mr. Casebolt, if you want to believe that he saw those envelopes back there and taken out of the safe and thrown into the bag, that is up to you. Those two envelopes, were they only in that safe the whole time? That is important. We show that he is one of the four managers. We know that Mr. Casebolt, according to him, is not there all the time. There were other managers and they divided their time, there is one manager in there a time. We know that those four managers all had access to that safe. We know that anyone of those four managers could have gone in there and taken out those envelopes and done whatever. They could have if they wanted to study the contents of the envelope, they could have taken the envelope out and taken a ten minute break and sat down at a table and had a Burger King cheeseburger with a coke and french fries."