921 So.2d 830 (2006)
Jon LINN, a/k/a John Linn, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-5474.
District Court of Appeal of Florida, Second District.
March 3, 2006.
*831 James Marion Moorman, Public Defender, and Pamela H. Izakowitz, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
CANADY, Judge.
Jon Linn appeals the circuit court's denial of his motion for judgment of acquittal, following his conviction for uttering a forged instrument. In his trial testimony, Linn explained how he came into possession of the instrument and testified that he did not know it was forged. Because the State failed to present evidence from *832 which the jury could exclude every reasonable hypothesis except that of guilt, we conclude that the trial court erred in denying the motion for judgment of acquittal.

I. Background

Linn was charged by information with uttering a forged instrument, in contravention of section 831.02, Florida Statutes (2004). The State alleged Linn attempted to cash a forged check for $376.50, drawn from the account of Lester Wagler.
At trial, Wagler testified he had been carrying a folded blank check in his wallet and did not realize the check was missing until his bank notified him that someone was attempting to cash the check. Wagler testified he was not certain how or when he lost the check but believed the check had either been stolen from him or had fallen out of his wallet. Wagler identified the phone number and address on the check in question as his own but denied writing a notation for house repairs on the memo line. Wagler also denied writing the amount for $376.50 and denied signing his name on the check. Wagler testified he did not know Linn and had never seen him before.
Elsy Raman, a teller at the Bank of America, testified that on April 15, 2004, Linn presented the check at issue, along with his current driver's license and an expired Bank of America check cashing card containing his picture. Raman testified she had a "gut feeling that something was wrong" so she obtained Linn's thumb print and told Linn to wait while she verified the signature. Raman then looked up Wagler's account to verify the signature. After discovering the signature on the check did not match the signature on file in Wagler's account and after conferring with another teller, Raman unsuccessfully attempted to contact Wagler. Raman then returned to where Linn was waiting, advised him that there was a problem with the check because the signatures did not match, and turned the check, driver's license, and check cashing card over to her supervisor.
Cathy Johnson, the assistant banking center manager, testified that after Raman handed her the items, she confirmed the signatures did not match and called the police. Johnson testified that although she did not speak directly to Linn, she overheard him say that he did not write the check and that someone else wrote it. Johnson testified Linn waited in the bank lobby until he was told the check would not be cashed and his check cashing card would be kept by the bank because his account was closed. Linn subsequently left the bank without the check or the check cashing card.
A Manatee County Sheriff's deputy testified the check was made out to "Jon D. Linn," while Linn's check cashing card bore the name of "Jon D. Linn, II." The deputy testified that an attempt to lift fingerprints off the check and check cashing card was unsuccessful.
After the State rested, defense counsel moved for judgment of acquittal arguing the State failed to prove that the check was forged or that Linn knew it was forged. The trial court reserved ruling on the motion.
Linn's mother, Anna Mae Lahay, testified she witnessed her son receive a check as payment for car repairs from a customer who identified himself as Lester Wagler. Lahay provided a description of the customer.
Linn testified in his own defense and denied knowing Wagler. According to Linn's testimony, on April 15, 2004, he received a call from someone inquiring about replacing the CV joints on his car. The person identified himself as Lester Wagler. Linn testified that he has several *833 friends who refer work to him, that the caller probably mentioned who referred him, but that Linn was unable to identify which friend it might have been. After the customer brought the car to Linn's house, Linn purchased the parts, performed the repairs, and then contacted the customer via a cell phone belonging to a person who was with the customer. Linn told the customer he only accepted cash and charged the customer $376.50 for parts and labor. However, upon his return, the customer claimed he only had a check. Linn told him to make it out to "Jon D. Linn." Linn testified he did not believe the check was forged and he did not ask the customer for identification. When questioned why the check was dated for April 14, 2004, when the repairs were not performed until April 15, 2004, Linn testified he did not know what the correct date was at the time. Linn also testified he did not notice the notation for "house repairs" because he was in a hurry to get to the bank.
Linn testified he waited at the bank while the teller verified the signatures and he only left when the bank employees refused to cash the check and refused to provide him with the address on the check.
Linn explained that he no longer had a receipt for the car parts because he gave the receipt to the customer due to the lifetime warranty on the parts. Linn also maintained that after he left the bank, he attempted to contact the customer at the cell phone number he previously used but no one answered and the number was disconnected about a week later.
After the defense rested, the State declined to call rebuttal witnesses and defense counsel again moved for judgment of acquittal. In support of the motion for judgment of acquittal, defense counsel argued that there was only circumstantial evidence that Linn knew the check was forged and that the State had "failed to rebut the defendant's hypothesis of innocence." The motion was denied.
The jury found Linn guilty of uttering a forged instrument, and defense counsel renewed the motion for judgment of acquittal. That motion was also denied. The circuit court withheld adjudication, sentenced Linn to time served, and imposed a fine. Linn now appeals.

II. Analysis

A. The Actual Knowledge Element of Uttering a Forged Instrument

Section 831.02 provides that the crime of uttering a forged instrument has the following elements: (1) uttering and publishing as true a false, forged, or altered instrument; (2) knowing the instrument to be false, altered, forged, or counterfeited; and (3) intending to injure or defraud. "The crime is completed by presentation of the forged instrument for payment, regardless of whether or not the bank actually makes any payment to the defendant." Henderson v. State, 572 So.2d 972, 974 (Fla. 3d DCA 1990).
Under section 831.02, it is not sufficient for the State to show that the defendant should have known the instrument was forged. Instead, the State is required to prove the defendant had actual knowledge that the check had been forged. Such knowledge may be proved by circumstantial evidence. See J.N.W. v. State, 361 So.2d 826, 826 (Fla. 1st DCA 1978) (holding that "the circumstantial evidence of [defendant's] guilty knowledge was sufficient" to support his conviction for uttering a forged instrument). Here, the State's case against Linn relied on circumstantial evidence to establish that Linn knew the instrument was forged. The State adduced no direct evidence that Linn had actual knowledge of the forgery.

*834 B. The State's Burden in Circumstantial Evidence Cases

A motion for judgment of acquittal should be granted only where "the evidence is such that no view which the jury may lawfully take of it favorable to the [State] can be sustained under the law." Lynch v. State, 293 So.2d 44, 45 (Fla.1974). "[A] special standard of review applies," however, when proof of one or more elements of the offense depends entirely on circumstantial evidence. Boyd v. State, 910 So.2d 167, 180 (Fla.2005). In such a case, a motion for judgment of acquittal should be granted "if the [S]tate fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt." State v. Law, 559 So.2d 187, 188 (Fla.1989). The State is not required to "`rebut conclusively every possible variation' of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events." Id. at 189 (footnote omitted) (citation omitted). In order to avoid the entry of a judgment of acquittal the State must therefore meet this "threshold burden" of presenting evidence which is inconsistent with the defendant's reasonable hypothesis of innocence. Id.
"[I]t is for the court to determine, as a threshold matter, whether the [S]tate has been able to produce competent, substantial evidence to contradict the defendant's story. If the [S]tate fails in this initial burden, then it is the court's duty to grant a judgment of acquittal to the defendant...."
Id. (quoting Fowler v. State, 492 So.2d 1344, 1347 (Fla. 1st DCA 1986)).
Accordingly, where the State relies entirely on circumstantial evidence to establish a defendant's knowledge that an instrument was forged, the defendant's reasonable hypothesis of innocence that he lacked knowledge that the instrument was forged requires the entry of a judgment of acquittal unless the State has presented competent evidence inconsistent with the defendant's theory of events. See Heath v. State, 382 So.2d 391, 392 (Fla. 1st DCA 1980) (holding that State failed to prove defendant knew check had been forged where evidence failed to rebut defendant's story that he sold tent to hitchhiker in return for check); Lampley v. State, 214 So.2d 515, 516 (Fla. 3d DCA 1968) (reversing conviction where there was absence of evidence as to how or when check came into defendant's possession, other than his testimony that he found check and was attempting to turn it in rather than cash it, and there was nothing to refute defendant's testimony that he was without knowledge that check was forged).

C. Linn's Reasonable Hypothesis of Innocence

In arguing that it produced evidence inconsistent with Linn's hypothesis of innocence, the State points out that Linn's first name  Jon  was spelled correctly on the check, despite its unusual spelling. The State maintains it would be unlikely for someone who did not know Linn to spell his first name correctly and contends that this circumstance shows Linn's guilty knowledge. The State also appears to argue that the incorrect date and notation for house repairs on the check were "red flags" sufficient to prove Linn's knowledge of the forgery.
Linn's testimony accounted for all these factors, and the State failed to provide evidence inconsistent with Linn's explanation. Moreover, in the circumstances present there, the correct spelling of Linn's name and the minor error in the date inscribed on the check are wholly insufficient to raise an inference of guilty knowledge. While the inaccurate notation *835 regarding home repairs may have been sufficient to prove that Linn should have known the check had been forged, it does not prove Linn actually knew the check had been forged, as is required for Linn to be convicted of violating section 831.02.
Contrary to the State's argument, the fact that Linn stated he did not write the check is not inconsistent with his hypothesis of innocence  rather, it supports it. Notably, the statement was made after Linn was notified there was a problem with the check. We have previously held that a defendant's statement disclaiming responsibility did not constitute proof of his knowledge. See Woods v. State, 765 So.2d 255, 257 (Fla. 2d DCA 2000). There is no basis for applying a different standard to Linn.
Although the State points to other factors, such as Linn's inability to say who referred the customer, his inability to provide a cell phone number, and his inability to provide a receipt for the car parts, Linn provided reasonable explanations for each of these factors which were consistent with his hypothesis of innocence. And the State presented no evidence that was inconsistent with Linn's explanation.
We do not agree with the dissent's characterization of Linn's hypothesis of innocence as "not reasonable." It is a common occurrence for businesses to innocently receive forged checks from customers. Linn's defense was that he was a victim of such an occurrence. The uncontradicted defense is undeniably reasonable because such events undeniably occur with great regularity. All the circumstances cited by the dissent to show the supposed unreasonableness of Linn's hypothesis of innocence suggest nothing more than that Linn had a less than perfect memory and engaged in sloppy business practices. Those circumstances do not in any way contradict Linn's version of events. See Porter v. State, 752 So.2d 673, 678-79 (Fla. 2d DCA 2000) (stating that in applying standard concerning "whether there was substantial, competent evidence for a jury to ... conclude" that "every reasonable hypothesis but that of guilt" was excluded, "the version of events related by the defense must be believed if circumstances do not show that version to be false").
There is nothing in Sorey v. State, 419 So.2d 810 (Fla. 3d DCA 1982)  the primary case cited in the dissent  which is inconsistent with our application of the well-established principle that the State has the burden of presenting evidence to contradict a defendant's reasonable hypothesis of innocence in a circumstantial evidence case. In Sorey, the jury was "free to reject the reasonableness," 419 So.2d at 815, of the hypothesis of innocence suggested by defense counsel because the defense "presented no testimony," 419 So.2d at 814, to support the hypothesis. There was no evidentiary basis for the version of events suggested by defense counsel, and the State "was not obliged to contradict defense counsel's unsupported hypothesis." Id. at 814.
As the court in Sorey recognized, however, if the defendant "shows through testimony" that incriminating circumstantial evidence can be "reasonably explain[ed]," the defendant's "version of events ... must be accepted as true unless contradicted by other proof showing the defendant's version to be false." Id. Here, as we have already discussed, Linn reasonably explained his possession of the check and his lack of knowledge that the check was forged, and the State provided no proof contradicting any aspect of Linn's version of events. Cf. Hale v. State, 651 So.2d 97, 97 (Fla. 2d DCA 1994) ("The circumstantial evidence standard does not require the jury to believe the defense *836 version of the facts when the [S]tate has produced conflicting evidence.").

III. Conclusion

Weighing the evidence in the light most favorable to the State under the special standard applicable in circumstantial evidence cases, we conclude that the State failed to meet its burden of presenting evidence refuting Linn's reasonable hypothesis of innocence. Therefore, the trial court should have granted Linn's motion for judgment of acquittal. Linn's conviction and sentence are reversed, and the case is remanded with instructions that a judgment of acquittal be entered.
Reversed and remanded.
FULMER, C.J., Concurs.
WHATLEY, J., Dissents with opinion.
WHATLEY, Judge, Dissenting.
I respectfully dissent. To be effective, a reasonable hypothesis of innocence must be reasonable. Here, Linn's hypothesis of innocence was not reasonable and was rejected by the jury. In Sorey v. State, 419 So.2d 810, 814-815 (Fla. 3d DCA 1982), the court noted, "While Sorey's counsel was free to make this argument, the jury was free to reject the reasonableness of his hypothesis." State v. Rudolph, 595 So.2d 297, 298 (Fla. 5th DCA 1992) (Cobb, J., concurring) (quoting State v. Law, 559 So.2d 187, 188-89 (Fla.1989)), set forth the rule that: "The state is not required to rebut conclusively every possible variation of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events." See also Perez v. State, 565 So.2d 743 (Fla. 3d DCA 1990).
The evidence for the jury to consider included: (1) Linn testified he purchased CV joints from Discount Auto, yet Linn had no receipt for the purchase or store employee to confirm such purchase; (2) Linn testified he purchased the parts for $79 each before being paid by a customer unknown to him; (3) Linn testified he was referred to the customer by a friend, but could not recall the friend's name; (4) Linn accepted a check for payment, even though his policy was cash and the check was in a crumpled and folded condition; (5) Linn testified that he did not realize that the wrong date was on the check and he did not notice the notation on the check, "for house repairs"; (6) Linn testified he did not ask the customer for identification; (7) Linn did not have the tag number or vin number of the vehicle allegedly worked on and was uncertain of the model year of the vehicle; and (8) after being allegedly and wrongfully divested of his services and cash, Linn failed to report such crime to law enforcement.
Simply stated, this was a matter for resolution by the jury. See Hale v. State, 651 So.2d 97 (Fla. 2d DCA 1994). I would affirm the conviction.