VILLANTI, Judge.
 

 Billy Dwayne Ginn appeals his convictions and sentences for two counts of uttering a forged document and two counts of grand theft, contending that the trial court should have granted his motion for judgment of acquittal because the State failed to prove that he had the requisite knowledge or intent to commit the charged crimes. We agree, and we reverse and remand for discharge.
 

 Facts
 

 The State charged Ginn with two counts of forgery, two counts of uttering a forged document, and two counts of grand theft based on allegations that he had cashed two forged American Express traveler’s checks at a Mr. Money check cashing store in November 2007. At trial, the State presented evidence that Ginn had been a customer of the Mr. Money store for approximately a year. On November 16, 2007, Ginn came into the store seeking to cash a $500 American Express traveler’s check. He presented his current driver’s license as identification and gave the clerk his current address. He did not appear nervous, and he did not try to conceal his identity in any way. The owner of the Mr.
 
 *708
 
 Money store, who had cashed “thousands” of traveler’s checks, believed that the traveler’s check Ginn presented was “absolutely legitimate” and cashed it.
 

 Three days later, Ginn returned to Mr. Money with a second $500 American Express traveler’s check. He again presented his current driver’s license as identification and gave his current address. The owner again believed that the traveler’s check was legitimate and cashed it.
 

 A few days later, Ginn returned to Mr. Money with a third $500 American Express traveler’s check. Even though this third traveler’s check appeared legitimate, because the two earlier traveler’s checks had not yet been honored by American Express, the owner refused to cash this third check, and she returned it to Ginn.
 

 Subsequently, American Express notified Mr. Money that the two traveler’s checks it had cashed were forgeries. Mr. Money’s owner then notified the police. The police collected the two traveler’s checks and the photocopies of Ginn’s identification that he had provided to Mr. Money. The police attempted to obtain fingerprints from the traveler’s checks, but they were unable to obtain any prints of value. Each of the police officers who saw the traveler’s checks Ginn cashed testified that they looked legitimate.
 

 The State also called an agent from the Global Security Division of American Express, Ms. Kenerson, to testify concerning the traveler’s checks. Ms. Kenerson testified that the traveler’s checks were “fairly good” replicas that would appear legitimate to an untrained eye. However, she testified that the traveler’s checks were, in fact, forgeries that were not issued by American Express. She testified that she was able to determine this because the serial numbers did not correspond to the dollar amounts and the holographs were slightly flawed.
 

 The State presented no other evidence in support of its case. After the State rested, Ginn moved for a judgment of acquittal on all of the charges, arguing that the State had not presented any evidence to show that he had forged the traveler’s checks or that he knew the traveler’s checks were forgeries when he cashed them. He also argued that because he did not know the checks were forgeries, he did not have the intent necessary to commit a theft. The trial court granted a judgment of acquittal as to the forgery count, but it denied the motion as to the uttering and grand theft counts.
 

 Ginn then testified in his own defense. He testified that he had a roommate in late 2007 who was supposed to be paying him $800 per month for rent. The roommate was often out of town, and he often received funds through the mail. In November 2007, Ginn’s roommate was behind on rent, and consequently Ginn was behind on his mortgage payments and utilities. Ginn called his roommate, and the roommate told Ginn that there were traveler’s checks in a piece of mail that he had received. The roommate told Ginn to take the traveler’s checks he needed to cover the past due rent.
 

 Ginn found the envelope referred to by his roommate, opened it, and found five $500 American Express traveler’s checks inside. They appeared to Ginn’s untrained eye to be legitimate traveler’s checks. With his roommate’s permission, Ginn took one of the checks, cashed it at Mr. Money, and used the funds to pay his mortgage. A few days later, again with his roommate’s permission, Ginn took a second traveler’s check, cashed it, and used it to bring his utility payments current. A few days later, when Ginn took a third traveler’s check to cover additional expenses, Mr. Money refused to cash the check.
 
 *709
 
 Ginn then took the traveler’s check to Am-scot, where they made a telephone call and determined that the check was a forgery. Ginn testified that he had no idea that the traveler’s checks were forgeries until he was told this by Amseot. He testified that he had no intent to steal any money from Mr. Money and that he would have repaid the funds to Mr. Money when he learned of the forgery, but the funds had already been sent to his mortgage company and the utility companies.
 

 Ginn also called Detective Ron Brown to testify. Brown testified that when he confronted Ginn with the evidence that the traveler’s checks were forgeries, Ginn denied knowing that. Ginn also told Brown that if he had known the traveler’s checks were forgeries, he would not have cashed them. Ginn told Brown that he would try to pay the funds back to Mr. Money if he could. Brown again admitted that the forged traveler’s checks were very good forgeries and appeared legitimate to him.
 

 After Ginn rested his case, he renewed his motion for judgment of acquittal. The trial court denied the motion, and the jury subsequently found Ginn guilty of the two uttering charges and the two grand theft charges. Ginn now appeals these convictions, arguing that the State’s evidence was insufficient as a matter of law to support the convictions.
 

 The Uttering Convictions
 

 Judge (now Justice) Canady set forth the law concerning the required element of knowledge for an uttering conviction in
 
 Linn v. State,
 
 921 So.2d 830, 833 (Fla. 2d DCA 2006):
 

 Section 831.02 provides that the crime of uttering a forged instrument has the following elements: (1) uttering and publishing as true a false, forged, or altered instrument; (2) knowing the instrument to be false, altered, forged, or counterfeited; and (3) intending to injure or defraud....
 

 Under section 831.02,
 
 it is not sufficient for the State to show that the defendant should have known the instrument was forged. Instead, the State is required to prove the defendant had actual knowledge that the check had been forged.
 

 (Italic emphasis in original; undeidine emphasis added.) “[T]he very essence of the offense [of uttering] is the nature of the written instrument,” and thus “[o]ne who passes a forged [instrument] in good faith, entirely innocent of the fact that it is a forgery, [can] not be convicted of uttering a forged instrument.”
 
 State v. Scarborough,
 
 170 So.2d 458, 460 (Fla. 2d DCA 1965);
 
 see also Taylor v. State,
 
 241 So.2d 426, 426 (Fla. 3d DCA 1970) (holding that an “essential element” of the crime of uttering a forged instrument is knowledge that the instrument was forged).
 

 In this case, there was undisputed evidence that the traveler’s checks were forgeries and that Ginn cashed them. The only disputed issue at trial was whether Ginn knew that the traveler’s checks were forged when he presented them for payment. Ginn testified that he had never seen or used traveler’s checks before. He denied knowing that the traveler’s checks were forged, both in post-Miranda
 
 [1]
 
 statements to the police and during his testimony at trial. In addition, all of the witnesses, including the police officers, the owner of Mr. Money, and the American Express investigator, testified that the forgeries were exceptionally good and that the traveler’s checks appeared to be legitimate.
 

 The State presented no evidence to rebut Ginn’s statements that he did not know
 
 *710
 
 that the traveler’s checks were forged. Instead, the State argued that the jury could infer actual knowledge that the traveler’s checks were forged simply from Ginn’s possession of them. However, unlike with possession of stolen property, there is no statute providing that possession of a forged instrument gives rise to a presumption that the holder knows the document is a forgery, and no case law so holds either.
 

 The State also argued that the American Express investigator’s testimony that the holograph on one of the checks was flawed was sufficient to permit the jury to infer that Ginn knew that the traveler’s checks were forgeries. However, at most, this testimony would show that perhaps Ginn
 
 should have known
 
 that the traveler’s checks were forged. It does not establish that Ginn
 
 actually knew
 
 that they were forged. In addition, contrary to the State’s argument on appeal, Ginn’s failure to repay the funds to Mr. Money after he learned that the checks were forgeries does not establish or permit the jury to infer that Ginn had actual knowledge that the checks were forged when he presented them to Mr. Money to be cashed.
 

 The State also argues that Ginn’s possession of the forged traveler’s checks combined with his failure to repay the funds to Mr. Money constitutes circumstantial evidence of knowledge that the checks were forged. When attempting to prove a charge of uttering a forged document, the State can establish a defendant’s knowledge that an instrument is forged through circumstantial evidence.
 
 See
 
 Linn, 921 So.2d at 833;
 
 J.N.W. v. State,
 
 361 So.2d 826, 826 (Fla. 1st DCA 1978). However, when the State relies entirely on circumstantial evidence to establish a defendant’s knowledge that an instrument was forged, the defendant’s reasonable hypothesis of innocence that he lacked knowledge that the instrument was forged requires the entry of a judgment of acquittal unless the State has presented competent evidence inconsistent with the defendant’s theory of events.
 
 See Linn,
 
 921 So.2d at 834;
 
 see also State v. Law,
 
 559 So.2d 187, 188 (Fla.1989) (holding that when the State’s proof of one or more elements of an offense depends entirely on circumstantial evidence, a motion for judgment of acquittal should be granted “if the [Sjtate fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt”).
 

 For example, in
 
 Linn,
 
 the defendant testified that he did auto repair work as a side job. 921 So.2d at 832. A friend called Linn and said that he knew someone who needed auto repairs made.
 
 Id.
 
 The friend identified the potential customer as Lester Wagler.
 
 Id.
 
 The customer, whom Linn had never met before, brought his car to Linn’s house.
 
 Id.
 
 at 833. Linn purchased the necessary parts and did the work.
 
 Id.
 
 He then called the customer, told him he accepted only cash, and told him that the repairs would be $376.50.
 
 Id.
 
 When the customer arrived, he said that he only had a check.
 
 Id.
 
 The check was in the name of Lester Wagler.
 
 Id.
 
 The customer made out the cheek to Linn per Linn’s instructions, and Linn testified that he had no reason to believe that the check was forged, and he did not ask for identification.
 
 Id.
 
 Linn then took the check to Bank of America, where he presented it along with his current driver’s license.
 
 Id.
 
 at 832. He waited while the teller looked up the account to verify the signature.
 
 Id.
 
 When the signatures did not match, the teller told Linn that there was a problem with the check and that he needed to wait.
 
 Id.
 
 Linn then waited while the teller got her supervisor. While Linn was waiting, he was overheard saying that he did not write the check.
 
 Id.
 
 Linn continued to
 
 *711
 
 wait in the bank lobby until he was told that the check would not be cashed.
 
 Id.
 

 In arguing against Linn’s motion for judgment of acquittal, the State contended that circumstantial evidence of Linn’s guilty knowledge was established by the correct spelling on the check of his unusually-spelled first name.
 
 Id.
 
 at 834. The State also argued that the incorrect date on the check and a notation about “house repairs” were “red flags” that were sufficient to prove Linn’s knowledge.
 
 Id.
 
 However, this court noted that Linn’s testimony accounted for these facts and that the -State had failed to introduce any evidence inconsistent with Linn’s explanation.
 
 Id.
 
 Accordingly, this court reversed Linn’s conviction and remanded for his discharge.
 
 Id.
 
 at 836;
 
 see also Heath v. State,
 
 382 So.2d 391, 392 (Fla. 1st DCA 1980) (holding that State failed to prove the defendant knew the check had been forged when the evidence failed to rebut his story that he sold a tent to a hitchhiker in return for check);
 
 Lampley v. State,
 
 214 So.2d 515, 517 (Fla. 3d DCA 1968) (reversing conviction when there was no evidence as to how or when the check came into the defendant’s possession, other than his testimony that he found the check and was attempting to turn it in rather than cash it, and there was no evidence to refute his testimony that he did not know the check was forged).
 

 In contrast, in
 
 State v. Konegen,
 
 18 So.3d 697 (Fla. 4th DCA 2009), Konegan testified at trial that he did not know that the check he had tried to cash was forged. However, the State introduced the testimony of the investigating detective, who said that Konegan had admitted post-Miranda that he did not know whether the check was “fake or not” when he presented it for payment.
 
 Id.
 
 at 699. Konegan also testified at trial that he was “suspicious about the check’s validity because it was made out for more than the renter was required to pay” and that he “feared the check was part of a ‘money-laundering scheme.’ ”
 
 Id.
 
 Because these statements were inconsistent with Konegan’s position that he did not know that the check was forged, the Fourth District held that the motion for judgment of acquittal should not have been granted.
 
 Id.
 
 at 700; see
 
 also J.N.W.,
 
 361 So.2d at 826 (finding sufficient circumstantial evidence of guilty knowledge when the check defendant presented to be cashed was made out to “Sammy Helms” and endorsed by “Sammy Helms” but the defendant was not Sammy Helms).
 

 In this case, as in
 
 Linn
 
 and unlike in
 
 Konegen,
 
 the State did not present any evidence whatsoever that was inconsistent with Ginn’s theory of events. Instead, it accepted Ginn’s theory of the facts and simply argued that a competing inference was equally reasonable. However, the State cannot defeat a motion for judgment of acquittal when it accepts the defendant’s uncontradicted theory of the facts and simply argues that a competing theory is equally reasonable.
 
 See Grover v. State,
 
 581 So.2d 1379, 1382 (Fla. 4th DCA 1991) (holding when the evidence presented showed only one set of circumstances, i.e., the defendant’s continued sales with knowledge that supplies were short, the State could not prevail because it had presented no evidence to
 
 contradict
 
 the defendant’s theory of innocence). Thus, because the State failed to present any evidence that Ginn actually knew that the traveler’s checks were forged when he presented them for payment and therefore failed to present any evidence that would contradict Ginn’s theory of the case, the trial court should have granted Ginn’s motion for judgment of acquittal on the uttering charges. We must therefore reverse these convictions.
 

 
 *712
 
 The Theft Convictions
 

 As to Ginn’s convictions for grand theft, the State was required to prove that Ginn knowingly obtained the property of another with the intent to either deprive the other person of the property or appropriate the property for his own use.
 
 See
 
 § 812.014, Fla. Stat. (2007). Intent to steal is a necessary element of the offense of theft, and the burden rests on the State to establish that the property was taken with this intent.
 
 See Maddox v. State,
 
 38 So.2d 58, 59 (Fla.1948). Further, the intent to steal must exist “at the time of the taking.”
 
 Adams v. State,
 
 443 So.2d 1003, 1006 (Fla. 2d DCA 1983). “If it appears that the taking was consistent with honest conduct, although the party charged with the crime may have been mistaken, he cannot be convicted of larceny.”
 
 Maddox,
 
 38 So.2d at 59. Moreover, when a “taking was in the open, with no subsequent attempt to conceal it, and there was no concealment nor denial of such taking, but on the other hand, an express avowal thereof,” a strong presumption arises that the defendant had no felonious intent.
 
 Id.; see also Adams,
 
 443 So.2d at 1007.
 

 Here, Ginn testified that he believed the traveler’s checks were legitimate and that he had no information to the contrary when he went to Mr. Money to cash them. The owner of Mr. Money also believed the traveler’s checks were legitimate when she cashed them. Ginn openly presented the traveler’s checks at Mr. Money, gave them his correct name, driver’s license, and current address, and stayed while the cheeks were cashed. He made no attempt to conceal his identity, and he never denied that he cashed the traveler’s checks but instead admitted that he cashed them believing them to be legitimate. In light of these facts, there is a strong presumption that Ginn had no intent to steal the funds from Mr. Money.
 

 The State presented no evidence to contradict any of the facts as testified to by Ginn and thus failed to rebut, in any regard, this presumption that Ginn had no intent to steal the funds. While the State asserts in this appeal that an intent to steal can be inferred from the fact that Ginn did not repay the funds after he was told of the forgery, such after-the-fact knowledge cannot give rise to a presumption of an intent to steal at the time of the taking. Further, Ginn testified that he could not repay the money because he had used the funds to pay his bills, and the State presented no evidence to contradict this testimony.
 

 Accordingly, because the State failed to meet its “threshold burden” of introducing competent evidence which was inconsistent with Ginn’s theory of events, the trial court erred in denying Ginn’s motion for judgment of acquittal on the theft charges. We must therefore reverse these convictions as well.
 

 Reversed and remanded for discharge.
 

 SILBERMAN, J., and FULMER, CAROLYN K., Senior Judge, Concur.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).